ORTIZ & ORTIZ, L.L.P.                                                                            Hearing Date: July 22, 2024
287 Park Avenue South, Ste. 337                                                Time: 3:30 p.m.
New York, New York   10010
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
*Co-Counsel to Honeedew Investment LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

BARBARA J. ABADI,                                                    Case No. 24-42873-JMM

                                                                                    Chapter 7
                                Debtor.
-------------------------------------------------------------------x

## HONEEDEW INVESTING LLC'S OPPOSITION TO MOTION TO IMPOSE THE AUTOMATIC STAY AND FOR SANCTIONS AND CROSS MOTION FOR AN ORDER (A) DISMISSING CASE; (B) DETERMINING AUTOMATIC STAY DOES NOT APPLY, (C) OR FOR RELIEF FROM THE AUTOMATIC STAY

Norma E. Ortiz, a member of Ortiz & Ortiz LLP, co-counsel to Honeedew Investment LLC ("Honeedew"), hereby states as follows:

**Background**

1. On July 11, 2024, Jennifer Polich ("Ms. Polich"), an individual purporting to act by way of power of attorney together with Douglas Pick, Esq., an attorney at law, submitted a voluntary petition for relief under chapter 7 for Barbara Abadi (the "Debtor" or "Mrs. Abadi") in this Court. As set forth in the Debtor's bankruptcy petition, filed as [Ecf. No. 1], it appears that neither Mrs. Abadi nor Ms. Polich actually signed the bankruptcy petition. Rather, Ms. Polich, who is also identified as a creditor of Mrs. Abadi, "docusigned" the petition ("Petition"). The power of attorney ("POA") appointing Ms. Polich as agent, with a supporting Declaration (the "Polich Declaration"), was filed with the petition ("Petition"). The Polich Declaration avers that

Ms. Polich made a valid POA in her favor on June 17, 2024 and that Ms. Polich then completed the Petition and its accompanying schedules as Mrs. Abadi's attorney in fact on July 11, 2024.

2. Mrs. Abadi is not incapacited: she is incarcerated pursuant to an Order of Commitment dated May 20, 2024, entered by the Honorable Nancy J. Bannon, J.S.C., of the Commercial Division of the New York State Supreme Court. *See* Medina Decl.

3. Mrs. Abadi along with her husband, Carlos Abadi ("Mr. Abadi") were confined to the custody of the New York County Sheriff until she purged her contempt of court until September 20, 2024. See Medina Decl.[1].

4. On the Official Bankruptcy Forms, Mrs. Polich asserted venue in Queens County because she asserts that Mrs. Abadi is a resident of Rikers Island in Queens County, New York the facility at which she is housed under confinement. See Medina Decl. However, Mrs. Abadi's Statement of Financial Affairs provides in Question 2 that the Debtor has not resided in New York since June 30, 2023 and last resided in New York from May 1, 2023 to June 30, 2023. Other than that period of time, the Debtor has resided in Argentina and in Florida (apparently living in a post office box in Palm Harbor, Florida). A summary of the information set forth in the Statement of Financial Affairs regarding the Debtor's residence is as follows:

| Location | Dates |
|---|---|
| Buenos Aires, Argentina | 1/1/22-3/31/22 |
| Tampa, Florida | 4/1/2022-10/31/2022 |

---

[1] Because of the lack of adequate notice of the hearing scheduled for July 22nd, the undersigned reserves the right to supplement this document with supporting documents.

| | |
|---|---|
| Buenos Aires, Argentina | 11/1/2022-3/21/2023 |
| 3438 E. Lake Rd., Ste. 14, Palm Harbor, Florida    34685 | 7/1/2023-8/31/2023 |
| Buenos Aires, Argentina | 9/1/2023-10/31/2023 |
| 3438 E. Lake Rd., Ste. 14, Palm Harbor, Florida    34685 | 11/1/2023-12/31/2023 |
| Buenos Aires, Argentina | 1/1/2024-4/30/2024 |
| Date of incarceration on Rikers Island (not listed in the Statement of Financial Affairs) | 5/20/2024-Present |

Based upon the assertions of fact by Ms. Polich, Mrs. Abadi did not have a permanent residence in New York on the date the Petition was filed.

5.     Mr. and Mrs. Abadi were confined following years of defiance of the New York State Supreme Court's Orders to cease false swearing, to turnover documents and information that they withheld concerning the millions of dollars that were stolen from Honeedew, for repeatedly concealing and transferring assets, and for their interefence with judgment collection by Honeedew, including asserting false opposition to the domestication of Honeedew's judgment in the nation of Argentina by asserting to the court that the judgment does not exist and is a phony.   See Medina Decl.   These false statements were made by Mrs. Abadi and Mr. Abadi to prevent Honeedew from domesticating its judgment in Buenos Aires Argentina, where the Abadi's own a $2.5 million dollar unencumbered luxury apartment. The state court that has overseen this case since 2018 found the need to incarcerate the Abadi's because of their multiple and long-standing violations of court orders. Moreover, because it was obvious that the Abadi's are residing outside of the United

3

States, Justice Bannon found it necessary to confiscate the Debtor's and her husband's passports because they pose a real and significant flight risk. *See* Medina Decl.

6. The Petition and its schedules were filed with Ms. Polich's with digital signatures. Honeedew sought a copy of original signatures by writing on two separate occassions and in open court. Debtor's counsel has refused to respond to those requests. See Medina Decl.

7. The undersigned requested a copy of the original signatures for the following reasons:

- Mrs. Abadi began her confinement on May 20, 2024;

- The Petition filed with the court was signed by Ms. Polich on July 11, 2024 by digital signature. Ms. Polich indicates that she resides in Florida.

- The Schedules, Statement of Financial Affairs, and supporting documents that were filed with the Court all bear digital signatures.

- The POA was notarized on June 17, 2024 and purportedly signed by Mrs. Abadi on that date. On June 17, 2024, Mrs. Abadi was produced in New York Supreme Court and Honeedew understands that she met privately with attorneys.

- The two witnesses to the POA – Gretchen Oswalt and Kenneth Montgomery – signed and dated the POA on June 29, 2024: 12 days after the POA was notarized.

- Based upon the information contained in the POA, the witnesses and the agent reside in Florida. It does not appear that "the witnesses" were present to witness the Debtor's execution of the POA on June 17, 2024 and executed the POA on a later date.

- Ms. Polich and her counsel filed a Declaration filed a Declaration in support of the Petition. Ms. Polich's Declaration is comprised entirely of hearsay statements as she has no personal knowledge concerning the information stated therein. Mrs. Polich's declaration further contains numerous misstatements of fact.

4

8. The POA does not specifically authorize the filing of a bankruptcy petition: it is ageneral power of attorney. See Medina Decl.

9. The bankruptcy petition was filed on the afternoon of Thursday, July 11, 2024. A status conference ( the "Conference") was scheduled before Judge Bannon for Monday, July 15th, at 11:30 a.m. That Conference was directed by Order dated June 17, 2024, the last appearance before Justice Bannon. See Medina Decl. On Friday, July 12th, Honeedew's co- counsel received an email from Mrs. Abadi's counsel Douglas Pick, Esq. demanding that Honeedew consent by Monday to the Debtor's release from confinement and asserted that Honeedew's failure to consent to the Mrs. Abadi's release would constitute a violation of the automatic stay and result in a request for sanctions.

10. At the Conference, the court noted that Mrs. Abadi appeared that day as a result of the Supreme Court's confinement order. Mrs. Abadi's counsel threatened Justice Bannon that she was required to immediately make an order releasing Mrs. Abadi. *See* July 15, 2024 Transcript 20:20-21:5. The Supreme Court refused to take any further action without an order from the Bankruptcy Court. Justice Bannon stated, in no uncertain terms, that if this were the type of case in which the automatic stay applied, she believed that she was without authority to take any action, which included issuing a new order modifying her order of commitment as her confinement order specifid a specific term of confinement. *See Id*. at Tr. 11:6

11. Justice Banon stated clearly that her decision was based upon her prior order and she would not enter a new order releasing the Debtor without bankruptcy court approval.

12. Judge Bannon also questioned bankruptcy counsel's familiarity with the case before it was filed since the action had been pending for many years and had a long and complex

history. Mr. Pick *confirmed he had been retained on July 11, 2024, the date of the bankruptcy filing. See Id.* Tr. 22:16-25, 23:1.

13. Counsel for Honeedew notified the Court of Honeedew's intention to seek a Bankruptcy Court determination concerning the matter to ensure nothing ran afoul of the Bankruptcy Code and that she intended to move the Bankruptcy Court for relief, which included moving to dismiss the case or, in the alternative, for a finding that the automatic stay does not apply in this case or for relief from the automatic stay. *See Id*. Tr. 23:5-10.

> MR. MEDINA: Thank you, your Honor. I just want to be very clear. Mr. Pick is suggesting something that is not being requested by us here. We're going to go to the bankruptcy court in an abundance of caution to clarify whether or not the stay applies. We do not believe that it applies. We do not believe that the stay applies here.

*Id*.

14. On Friday, July 19, 2024 at 3:17 p.m., the undersigned and co-counsel received an email with a copy of the Debtor's Motion to Enforce the Automatic Stay (the "Motion") and a proposed Order to Show Cause scheduling a hearing on the Motion. On Sunday, July 21, 2024, at 3:32 p.m., the undersigned received an Electronic Case Filing Notice from the U.S. Bankruptcy Court, Eastern District of New York, that scheduled a hearing on approximately 24 hours later on the Motion for July 22, 2024 at 3:30 p.m. The Order to Show Cause permits counsel to raise opposition orally at the hearing.

**LEGAL ARGUMENT**

**I.  This Case Requires Dismissal**

15. Mrs. Abadi's Petition for voluntary bankruptcy filed by an agent under a power of attorney (POA) that was not properly witnessed or acknowledged and does not provide specific

6

authority for the filing of a bankruptcy petition fails to "commence" a case under chapter 7 of the Bankruptcy Code and accordingly, this case should be dismissed *ab initio*.

16. The legal framework governing execution of a bankruptcy petition by an agent under a POA requires that the POA be validly executed in accordance with state laws, including proper witnessing and acknowledgment. *See In re Vitagliano*, 303 B.R. 292 (Bankr. W.D.N.Y., 2003). "A power of attorney may not be used to file a petition on behalf of a debtor unless it contains language specifically authorizing the commencement of a bankruptcy case." *In re Curtis*, 262 B.R. 619, 623 (Bankr. D. Vt. 2001); *See also In re Morgan*, 182 B.R. 4, 5 (Bankr. S.D.N.Y. 1995). The *Vitagliano* court concluded that a voluntary bankruptcy *case cannot be commenced when the petition is filed by someone other than the debtor*, except as allowed by *specific rules regarding infants or incompetent persons, underscoring the necessity for explicit authorization within the POA*. *See In re Vitagliano*, 303 B.R. 292 (Bankr. W.D.N.Y., 2003). Like Mrs. Abadi, *Vitagliano* involved an incarcerated person's efforts to file for relief under chapter 7 through a power of attorney – in that case the agent was the mother. The Bankruptcy Court specifically rejected the filing based on several factors which are present here.

17. As this Court is well aware, bankruptcy cases are commenced pursuant to 11 U.S.C. § 301 and they recognize that "a voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." *See* 11 U.S.C.§301. Bankruptcy Rule 9009 states, in part, that "[t]he Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate." *See* Official Form No. 1. The form for a "Voluntary Petition" *requires* the "Signature of Debtor." *See* Bankruptcy Rule 9009.

18. Recognizing that some persons may be incapacitated or infirm and nevertheless require access to the Bankruptcy Courts, Bankruptcy Rule 9010(c) states:

> Power of Attorney. The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose *other than* the execution and filing of a proof of claim or the acceptance or rejection of a plan shall be evidenced by a power of attorney conforming substantially to the appropriate Official Form.

*See* Bankruptcy Rule 9010(c) (*emphasis added*). Here, there is no allegation that Mrs. Abadi is incapacitated: she is simply incarcerated and the two *are not* interchangeable. Quite the contrary, Ms. Polich makes *many* baseless hearsay statements to weave a tale as to why Mrs. Abadi is unable to execute a bankruptcy petition herself, yet these hearsay statements are belied by several things, including the truth by facts. For example, Mrs. Polich ignores that Mrs. Abadi has appeared post-confinement in the New York Supreme Court on at least three (3) occasions since her confinement and at each such time was given ample opportunity to meet with counsel and execute any documents that she wishes to execute. *See* Medina Decl. In fact, Mrs. Abadi's counsel has not once protested a lack of access to Mrs. Abadi, instead indicating on numerous occasions, in open court, that he has met with his client on numerous occasions and has visited her during her confinement. *See* Medina Decl.

19. In response to defects in the Petition and filings, Mrs. Abadi and her counsel have responded with outright hostility refusing to even provide a proof of a real signature on the Petition relying instead on the Bankruptcy Court Clerk's automatically generated notice of electronic filing. *In re Vitagliano* noted that with the amendment of Bankruptcy Rule 5005(a) in 1993, the Rules Committee added language "[w]hich *precludes* the Clerk of the Bankruptcy Court from refusing to accept for filing any petition or other paper presented for the purpose of filing solely because it is not presented in proper form as required." *See Id*. 303 B.R. at 295. Moreover, *In re Vitagliano*

described the practical changes for identifying defective petitions brought before the Court moving to Judges and parties in interest to dismiss defective petitions because often times "'fatal' defects are not brought to the Judge's attention until a case number has been assigned and the initial routine case processing has begun (such as the appointment of a trustee)." *Id*.

20. Furthermore, for an agent to have the authority to file a bankruptcy petition on behalf of a principal, the POA *must specifically include such authority*. The Bankruptcy Code and Federal Rules of Bankruptcy Procedure emphasize the necessity for explicit authorization within the POA for it to be effective in commencing a bankruptcy case. See *In re Maes*. 616 BR 784 (Bankr. Di. Colo 2020). In *Maes*, the Bankruptcy Court highlighted the importance of the POA being effective and properly executed, demonstrating that even when a POA is in place, its terms and conditions, as well as its compliance with legal requirements, are crucial for its validity in authorizing actions such as filing a bankruptcy petition. *See Id*.

21. *In re Vitagliano* also noted-as is present here-that dismissal *ab initio* is also appropriate "where residence information is jurisdictionally fault." *Id*. Mrs. Abadi's panoply of addresses, is included in the chart below:

| Location | Dates |
|---|---|
| Buenos Aires, Argentina | 1/1/22-3/31/22 |
| Tampa, Florida | 4/1/2022-10/31/2022 |
| Buenos Aires, Argentina | 11/1/2022-3/21/2023 |
| 3438 E. Lake Rd., Ste. 14, Palm Harbor, Florida    34685 (Mailbox Store) | 7/1/2023-8/31/2023 |

| Buenos Aires, Argentina | 9/1/2023-10/31/2023 |
|---|---|
| 3438 E. Lake Rd., Ste. 14, Palm Harbor, Florida    34685 (Mailbox Store) | 11/1/2023-12/31/2023 |
| Buenos Aires, Argentina | 1/1/2024-4/30/2024 |
| Date of incarceration on Rikers Island (not listed in the Statement of Financial Affairs) | 5/20/2024-Present |

*See* Statement of Financial Affairs. As set forth above, Mrs. Abadi resided in Buenos Aires, Argentina for the greater part of the last 180 days.  Moreover, her stays at 3438 E Lake Road, Suite 14, Palm Harbour Florida are the address of the mailbox store where Mrs. Abadi receives mail.   To Honeedew's knowledge, one is not permitted to sleep and live in a postal office.   Here, Mrs. Abadi lays venue based on the location of her temporary confinement: this is certainly *not* the standard for venue of voluntary bankruptcy cases.

22. Similarly, even if the POA were to be construed as valid, it was not signed in accordance with Bankruptcy Rule 9009 and as such *must* fail.  Rule 9009 provides that "the Official Forms prescribed by the Judicial Conference of the United States shall be observed ...." *See Id*.  The Judicial Conference of the United States has prescribed numerous Official Forms including forms of the Petition, SOFA, and Schedules. *See* Official Form Nos. 101, 106, and 107. Those documents *do* require a "Signature of Debtor" (or someone otherwise properly authorized to sign for a debtor). *See* See *In re Maes*., 616 BR 784 (Bankr. Di. Colo 2020) (citing *In re Vitagliano* , 303 B.R. 292, 293 (Bankr. W.D.N.Y. 2003).   (Thus, "Debtors must sign the petition, Schedules, and SOFA as a means of not only authorizing the filing of these documents, but of verifying, under penalty of perjury, that they have reviewed the information contained therein and

that it is true and correct to the best of their knowledge, information, and belief." ); *see also In re Stomberg* , 487 B.R. 775, 807 (Bankr. S.D. Tex. 2013) ; *see also In re Veluz* , 2015 WL 161002, at *2 (Bankr. D.N.J. Jan. 12, 2015) ("a debtor is required to sign the petition.").

**II.     Sanctions are Are Not Appropriate Under the Circumstances of this Case**

23.     Counsel for Mrs. Abadi asserts with temerity that Honeedew should be sanctioned for appearing before a scheduled appearance in the New York Supreme Court on July 15, 2024 and seeking a brief adjournment to enable Honeedew to bring the question of whether, assuming the Petition were properly filed, Mrs. Abadi's confinement should continue in accordance with 11 U.S.C. §362(b):   a determination which Mrs. Abadi and her counsel and all parties readily agree is a question that *can only be resolved only by this Bankruptcy Court* should it determine that the case should proceed.   Indeed, Mrs. Abadi and her counsel go several steps further than what the automatic stay could ever remotely require, seeking to have this Bankruptcy Court impose sanctions against a party for refusing to instantaneously and unequivocally adopt the position of opposing counsel[1] of all proceedings based upon an counsel's theory without so much as the opportunity to review the matter and bring it before this Court for determination.   Mrs. Abadi was in Court on June 17, 2024, the date that she purportedly executed the defective power of attorney that she gave to Ms. Polich.   There is simply no reason why Mrs. Abadi could not have signed a petition at the June 17, 2024 appearance, in Rikers Island, or any time thereafter since her lawyers have unequivocal access to her during confinement.   See Medina Decl.   Indeed, the Petition appears to have been brought on hastily and aggressively in an effort obtain Mrs. Abadi's quick

---

[1]  Bankruptcy counsel claimed familiarity with the entirety of the 8 year history of the case having been retained only a few days prior to initiating the Petition.

release at a scheduled hearing 1 business day after the Petition was filed, so that she, in Honeedew's view, could flee the jurisdiction.

24. Honeedew also asserts that it has been provided inadequate notice of the request for sanctions and can not possibly oppose the request on 24 hours notice. Should the Court consider the request, the motion should be adjourned to provide Honeedew ample opportunity to defend against this request.

**III. Even if the Case Were Valid, 362(a) Does not Apply to her Confinement**

A. <u>Facts Relevant to Barbara Abadi's Confinement</u>

25. Mrs. Abadi was taken into custody on May 20, 2024 following six (6) separate findings of contempt.

26. The commitment order pursuant to which the Abadi's were confined states:

> WHEREAS, the defendants, Carlos Abadi and Barbara Abadi, executed a confession of judgment in favor of the plaintiff on May 17, 2017, in the principal sum of $4,603,408.23;
>
> WHEREAS, the defendants failed to satisfy that judgment;
>
> WHEREAS, after seven years of enforcement proceedings this court, upon the plaintiff's motion and after an evidentiary hearing, issued an order on April 4, 2024, finding the defendants to be in civil contempt of court for failure to comply with prior court orders and failing the satisfy the judgment (NYSCEF Doc. No. 449, 450);
>
> WHEREAS, the court provided the defendants with numerous opportunities to purge the contempt by making payment to the plaintiff in the principal sum of $4,603,408.23, plus statutory interest of 9% from May 17, 2017,
>
> WHEREAS, the parties appeared before the court on May 13, 2024, May 15, 2024, and May 20, 2024, and the defendants failed to purge their contempt, as set forth in the court's order court's orders dated May 13, 2024 (NYSCEF Doc. No 462) and May 15, 2024 (NYSCEF Doc. No. 463); it is hereby

*See* May 20, 2024 Confinement Order. ("Commitment Order").

27. In the two weeks prior to the Commitment Order, the Supreme Court made drastic efforts to offer the Abadis an opportunity to purge their contempt by showing some compliance. At a hearing before the Supreme Court which took place on May 13, 2024, the court noted the Abadis' control over the Buenos Aires apartment, possession of data belonging to Abadi & Co. concerning their theft, power to direct their attorneys in the nation of Argentina, Mr. Abadi's inheritance and other assets in support of her finding that the Abadis' claim they had insufficient resources to take any action whatsoever was not credible.

28. During the May 15, 2024 Hearing the Court specifically stated to the Abadi's that:

> you are to pay and then you began to move your assets and hide your assets and defy Court orders to not pay. That's where we are and that's why we have an officer here. Because given the history of this case, the only other option that remains is incarceration until you purge your contempt.

*See* May 13, 2024 Tr: 6:9-16 Medina Decl.

Further the Supreme Court noted:

> It was in many prior orders. There were many warnings about this. Your lawyers, when you had them, up until last year, were quite aware of this. I'm sure they explained it to you. To no avail, apparently.

*See Id.* at 6:18-22.

> The Court: You understand that no matter what happens and how much time you serve in jail, the judgment stays. The judgment does not go away. It only gets bigger. There's a statutory 9 percent. It's a pretty high rate. That is why you owe twice the amount that you originally agreed to pay and didn't pay. That's what you did to yourself -- yourselves. Mr. Medina, do you know exactly the number today?

*See Id.* at 34:22-35:1-4.

13

29. As set forth above, Honeedew reiterates that by virtue of the false information and defects in the Petition and Schedules, that immediate dismissal is appropriate. Nevertheless, if the Court were to assume that there was a valid filing -- which it should not -- 11 USC §362(b) nevertheless provides that the automatic stay does not apply to Mrs. Abadi's confinement.

30. A "criminal proceeding" under § 362(b)(1) is not limited to criminal prosecution under criminal statutes. Contempt proceedings in civil cases can be either criminal or civil in nature and if criminal in nature they will fall under the § 362(b)(1) exception. *See Guariglia v. Community Nat. Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975) (distinguishing between contempt proceedings to uphold the dignity of the court and contempt proceedings intended to effectuate collection of a debt). The label placed on a commitment *is not* dispositive in reaching a decision on whether confinement is for civil contempt or for criminal contempt. *See In re Burgess*, 503 B.R. 154, 157 (Bankr. M.D. Fla. 2014).

31. Generally, criminal contempt proceedings are intended to uphold the dignity of the court and are vindicatory in nature. If a party engages in "willful and deliberate defiance of the court's orders" and "the consequences of the contumacious behavior" affront "the public interest," *United States v. United Mine Workers*, 330 U.S. 258, 303 (1974), a court's resulting contempt is "criminal in nature." *See In re Rock*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989), *aff'd*, 929 F.2d 694 (4th Cir. 1991); *see also America Online, Inc. v. CN Productions, Inc.*, 272 B.R. 879, 882 (E.D. Va. 2002) (finding if the purpose of the contempt is "to uphold the [c]ourt's dignity," the contempt is vindicatory in nature).

32. Civil contempt proceedings, on the other hand, are generally remedial in nature and focused more on compelling behavior that may benefit some other party to the litigation that the

14

character and purpose of the sanctions imposed often determines whether contempt is civil or criminal in nature); *see also In re Lincoln*, 264 B.R. 370 376 (Bankr. E.D. Pa. 2001) (*citing Guariglia v. Community Nat. Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975) (distinguishing between contempt proceedings to uphold the dignity of the court and contempt proceedings intended to effectuate collection of a debt)).

33.    Mrs. Abadi's contempt finding was based upon the state court's determination that the Debtor's contumacious conduct represented an affront to the dignity of the state court. Specifically, Mrs. Abadi and Mr. Abadi were found to have been in contempt on at least four (4) occassions and were warned repeatedly that their failure to obey court orders would ultimately lead to their confinement.   The Commitment Order provides that Mrs. Abadi and Mr. Abadi are confined for a specific period of time i.e. from May 20, 2024 to September 20, 2024.   Further, the Commitment Order provides that the Abadi's *may* purge their contempt if they pay a sum equal to the amount of the Judgment.   The Supreme Court further made very clear that "no matter how much time they spend in jail," the Judgment still does not go away.   *See Id*. at 34:22-35:1-4.   See *In re Maloney,* 204 B.R. 671, 674 (Bankr. E.D.N.Y. 1996) ("A contempt order that, on the other hand, incarcerates a party for a definite period of time or imposes another penalty, without any provision for purge of the contempt, does not serve to redress a private right and is considered a criminal");   See alo *In re Moon,* 201 B.R. 79, 85.   Here, Mrs. Abadi has been confined for a definite period of time and she may purge that contempt, yet that *does not* absolve her of her liability under the Judgment.   *See Id*. at 34:22-35:1-4.   Under the circumstances, Mrs. Abadi's confinement is unequivocally criminal in nature for purposes of § 362(b)(1). "When the state court entered the contempt order, it reasoned that the Debtor had "…willfully violated the Orders of this Court…'" Mot. to Impose Stay, Exh. E at 7, ECF No. 8, "…and there was no reason to believe

15

that any fines or threat of fines from the court would change the Debtor's attitude or compel his compliance…" *Id*. This is consistent with the notion that a criminal contempt order addresses "… a rejection of judicial authority, or an interference with the judicial process…" *See Lewis v. United States*, 518 U.S. 322, 329 (1996) (quoting *Codispoti v. Pennsylvania*, 418 U.S. 506, 516 (1974)).

34. Had the state court merely directed the incarceration of the Debtor for a period of time as punishment for the Debtor's willful violation of the court's orders, rather than craft a purge amount which required payment be made to a pre-petition creditor, a bankruptcy court could potentially find the state court's sentence to be violative of the automatic stay. *See Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000); *In re Burgess*, 503 B.R. 154 (Bankr. M.D. Fla. 2014) (finding state court contempt order was criminal in nature, and enforcement was not barred by automatic stay).

IV. **The Court Should Adjourn the Debtor's Motion to Permit Honeedew to Seek Relief from the Automatic Stay**

35. Should the Court not grant Honeedew's cross- motion, it intends to move the Court for relief from the automatic stay, to dismiss the case, and for related relief, so that it can, among other things, pursue the collection of its judgement in Argentina against their interests in the Buenos Aires apartment. Although Mrs. Abadi did not list several things in a Petition, her interest in the apartment as an asset of the estate is notably among them, Honeedew wishes to ensure that it does not take any action that violates the automatic stay.

**WHEREFORE**, Honeedew requests that the Court deny the Debtor's Motion, grant its cross-motion to dismiss the case, or adjourn the Debtor's motion to permit Honeedew adequate time to respond to the Debtor's request for sanctions and to file a motion seeking the relief requested above.

Dated: July 22, 2024
New York, New York

                                         *s/Norma E. Ortiz*
                                         Norma E. Ortiz
                                         Ortiz & Ortiz LLP
                                         287 Park Avenue South, Ste. 337
                                         New York, New York   10010
                                         Tel. 718.522.1117
                                         *Co-counsel to Honeedew Investment LLC*

4886-7638-4210, v. 1