**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br> BARBARA J. ABADI and CARLOS A. ABADI,<br><br>               Debtors. | Case No. 24-42873-jmm<br><br>           Chapter 7 |
| HONEEDEW INVESTING LLC.,<br><br>           Plaintiff,<br><br>           vs.<br><br>CARLOS A. ABADI and BARBARA J. ABADI,<br><br>           Defendants. | Adv. Proc. No. 24-<br><br><br>COMPLAINT TO BAR DISCHARGE AND DISCHARGEABILITY OF DEBTS |

## COMPLAINT

Honeedew Investing LLC, successor by merger to Honeedew Investing Ltd. ("Plaintiff or "Honeedew") complaining of Defendants Carlos A. Abadi ("Carlos") and Barbara J. Abadi ("Barbara") (collectively the "Abadis") by and through their undersigned counsel allege and say as follows:

## PRELIMINARY STATEMENT

1.     The bankruptcy discharge of a debtor's debts is extraordinary relief which should be afforded to the honest but unfortunate debtor. However, the Abadis can not be viewed as honest debtors and their discharge should be denied for myriad reasons. As set forth in greater

1

detail below, the Abadis, among other things, (i) committed fraud and a defalcation of their fiduciary duties to the Plaintiff by transferring and improperly misusing the funds placed with them as the Plaintiff's broker-dealer and agent; (ii) failed to disclose transfers of assets prior to their bankruptcy filings; and (iii) made  made false oaths and accounts in connection with their bankruptcy filings.

## NATURE OF THE ACTION

2.    This action is brought pursuant to Rules 7001(6) and 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 523(a)(4),(6),and (19) and Section 727(a) of title 11, United States Code, section 1010 et seq. (the "Bankruptcy Code") to avoid discharge of the Plaintiff's debts by the Abadis.

JURISDICTION AND VENUE

3.    The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§157(a) and (b), and 1334(b).

4.    This is a core proceeding under 28 U.S.C. §§157(b)(2)(A), (B), (F) and (O). Venue is proper in this district under 28 U.S.C. §1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.

5.    This Court does not have jurisdiction to enter a final judgment against the Abadis on claims raised herein. The Plaintiff does not consent to this Court's jurisdiction to enter a final judgment in this proceeding.

## PARTIES TO THE ACTION

6.    At all times hereinafter mentioned, Plaintiff is a Delaware LLC.

7.    Barbara is an individual who at the time of the filing of her petition swore she

resided  at the jail complex commonly known as Rikers Island, located in Queens County, New York.

8.     Carlos is an individual who at the time of the filing of his petition swore he resided at at the jail complex commonly known as Rikers Island, located in Queens County, New York.

## FACTS COMMON TO ALL COUNTS

9.     Plaintiff is a judgment creditor of the Abadi's stemming from debts incurred by the Abadi's as a result of their failure and/or refusal to have their companies honor withdrawal requests of funds placed with the Abadi's and their companies totalling $14,603,408.23.

10.     Honeedew was able to recover a portion of the sums pilfered by the Abadi's leaving a balance of $4,655,622.23 against the Abadi's that is set forth in a judgment dated and entered on May 17, 2017 (the "Judgment") pursuant to a confession of judgment.

11.     In connection with the Judgment – which they confessed –  the Abadi's concealed Carlos's ownership of and Barbara's interest in a multimillion-dollar luxury apartment in Buenos Aires Argentina ( the "BA Apartment").

12.     At the time of the entry of the Judgment the Abadi's resided in a lavish New York City apartment located at 900 Fifth Avenue, Apt. 2d, New York, New York (the "NY Apartment").

13.     In or about 2014, the Abadi's were licensed in the securities industry and subject to the regulation of the Financial Industry Regulatory Authority ("FINRA") through which they operated several companies, including Abadi & Co.

14.     FINRA is a government-authorized not-for-profit organization that oversees U.S.

3

broker-dealers. A broker-dealer is in the business of buying or selling securities on behalf of its

customers or its own account or both.

**<u>Post Judgment Proceedings in State Supreme Court</u>**

15.     Honeedew filed its first Order to Show Cause in this matter on September 20,

2018, nearly one year ago ("Motion Seq. 1 before the N.Y.S. Supreme Court in New York

County"), after learning of rampant false swearing by the Abadi's.  Honeedew sought three

forms of relief in Motion Seq. 1: (a) an order of contempt for false swearing and interference

with collection of the Judgment; (b) on order of contempt for making false allegations of fact in

a foreign Court (Argentina) denying the validity, genuineness, and unpaid status of the open

Judgment before this Court; and (c) for turnover of the BA Apartment to Honeedew's agent in

Argentina for the purpose of liquidating that unit to ensure the partial satisfaction of the

Judgment.

16.     While the decision on Motion Seq. 1 was pending, Honeedew was forced to file a

second application, on October 5, 2018 ("Motion Seq. 2") seeking a Temporary Restraiing Order

("TRO").  Motion Seq. 2 sought: (1) a TRO preventing the Abadi's from transferring,

hypothecating, or disposing of non-exempt real or personal property anywhere; (2) imposing an

additional contempt sanction for further false swearing and interference by the Abadi's having

filed an "emergency demand"[1] in Argentina to lift a restraint (in favor of Honeedew) on their

BA Apartment the Abadi's submitted to those courts.

17.     The October 2, 2018 was filed in response to the State Court's order

---

[1] This required Honeedew's Argentina counsel to "show cause" by October 10, 2018 why the Abadi's false request
should not be granted.

4

granting TRO and interim relief and scheduled a return date to coincide with Motion Seq. 1 for November 14, 2018 at 11:30 a.m.[2]

18.    On November 28, 2018, the parties again appeared before the Court at which time it quickly became evident the Abadi's had done little or nothing towards satisfying the Judgment despite having been given *more* time by the Court to do so.  The parties, upon the recommendation of the Court, discussed terms for an affidavit acknowledging the validity of the Judgment to be sworn-to by the Abadis.  The resolution was designed to end the false-swearing before the Argentine court.

19.    When the terms of the interim resolution were written-out on a stipulation form; the Abadi's abruptly withdrew consent and refused to sign the document (on information and belief, this occurred after Mr. Abadi spoke to his lawyer in Argentina by telephone from outside the courtroom).

20.    During the Sate Court hearing on that day, the Court modified the document written up by the parties from which the Abadis withdrew their consent and entered the same as an "Interim Order," on Motion Seq. 1 and Motion Seq. 2.  The order required delivery of executed affidavits by the Abadi's attesting to the validity of the Judgment by a date certain (the "Interim Order").

21.    The Interim Order provided that by no later than December 5, 2018 (the "Interim Order Deadline") affidavits were to be delivered to counsel for the Plaintiff.

---

[2] The Court noted during the October 10, 2018 hearing that it was obvious that the Abadi's had substantial non-exempt assets in the millions of dollars comprised of their multimillion dollar Fifth Avenue apartment and Buenos Aires Apartment and that the Court expected the Abadi's to use the time given for briefing to voluntarily liquidate their assets to the pay the Judgment.  Noting specifically that it was no excuse that they for example owed $5,00,000 but could only pay $4,000,000 it being incumbent upon them to comply with orders of the Court.

22.     The Abadis did not comply with the terms of the Interim Order Deadline and on December 6, 2018, the Abadi's filed a Notice of Appeal of the Interim Order [NYSECF Doc. No. 50] (the "Appeal").[3]

23.     The parties appeared before the State Court on January 16, 2019, at which time the Court orally ruled that that the failure to abide by the directive of the Interim Order was contumacious.  Motion Seq. 1 and Motion Seq. 2, were deemed fully submitted and decisions would issue forthwith.

Execution against Shares and Motion Seq. No. 3

24.     Honeedew continued its efforts to collect upon the Judgment from the Abadis while awaiting entry of orders on Motion Seq. 1 and Motion Seq. 2, and conducted an execution sale through the Office of the New York County Sheriff ("Sheriff") upon Mr. Abadi's sole ownership interest in the company, Abadi & Co. (the "Company").

25.     On February 27, 2019, the Sheriff conducted an auction sale (the "Auction") of the share of Abadi & Company.

26.     At the Auction the Plaintiff tendered the highest bid for the securities in the investment advisory firm owned and controlled by the Abadis in the amount of $20,000.00.

27.     Upon acquiring ownership of the investment advisory firm, demand was made to the Abadi's and their-then counsel, Duffy & Amedeo LLP ("D&A"), for all written correspondence to and from D&A and the Company including copies of all billing statements, attorney notes, memoranda, affidavits, payment advices, and the like, relating to all services

_____

[3] The Appeal has now been dismissed.

performed to date pursuant to a September 11, 2018 engagement of D&A by the Company and the Abadi's (the "Demand").

28.     The Demand further required the Abadi's to immediately turn over all password and login information for emails, bank accounts, and the like, and the return of all Company property in the Abadi's possession so that its new owner could meet all day-to-day responsibilities relating to the Company including compliance with tax filings and the like.

29.     Both the Abadi's and D&A refused to comply with the Demand that caused the Plaintiff to file Motion Seq. 3 which sought a TRO and an order requiring: (a) Judgment Debtors and/or their agents to turn over all converted property of the Company in Judgment Debtors' possession and/or their agents' possession and (b) requiring D&A to turnover copies of the entirety of its file relating to the attorney-client engagement agreement between D&A and the Company dated September 11, 2018.

30.     On March 22, 2019, the Court entered a TRO on Motion Seq. 3.  On March 26, 2019, the Abadi's, *then* acting through Brown Rudnick LLP as their legal counsel, filed an emergent appeal to the First Department of the March 22, 2019 Order ("Appeal 2").  In the Appeal 2, the Abadi's sought to overturn that portion of this Court's March 22, 2019 Order which required the Abadi's to turnover the converted property, including the login and password information, alleging that the communications which they sought to protect were somehow protected by the attorney client privilege and that this Court denied the Abadi's an opportunity to contest Motion Seq. 3.

31.     On March 28, 2019, following argument before Justice Singh in the First

Department, the First Department expressed doubt as to the legitimacy of the Abadi's

contentions and determined it would accelerate the return date of Motion Seq. 3 before the Court

and in abundance of caution maintained the *status quo* for a *very short time until April 17, 2019*

to allow the Abadi's time to submit a written brief in opposition to Motion Seq. 3 to this Court[4]

against the March 22, 2019 Order.

32.     The First Department's Order dated March 29, 2019, provided that the TRO was

modified as follows: the judgment creditor shall not review any privileged digital files contained

in DropBox that are between the individual judgment debtors and their attorneys. All such files

shall be produced on the return date for an *in camera* review. The branch of the TRO requiring

the judgment debtors and/or their agents to turn over the cell phone account is stayed pending

the hearing of this order to show cause. The outlook.com email server is for attorney's eyes only.

The judgment debtor shall comply with all aspects of the TRO within 24 hours.

33.     At the April 17, 2019, hearing following argument, the Court adjourned Motion

Seq. 3 until April 24, 2019.  Prior to the next hearing, Honeedew submitted its responsive papers

on April 22, 2019 which established unequivocally the Abadis could not possibly have any

protectable attorney-client interest in any data or communications as they expressly waived such

rights in a writing three (3) years before in the Company's employee handbooks (that the

Abadi's prepared) and that the DropBox folder did not appear to contain any correspondence

whatsoever between the Abadi's and their counsel.

34.     The Dropbox folder referred to by the Abadis was comprised of over 100,000

documents.

---

[4] Which in fact the Abadi's so submitted on April 12, 2019 [NYSECF Doc. No.'s 73-84]

35.     The Abadis had no credible assertion of attorney-client privilege in connection with the 100,000 documents.

36.     By Decision and Order dated April 17, 2019 ("April Decision"), the State Court ruled with respect to Motion Seq. 1 and Motion Seq. 2 that the Abadi's: (1) should be punished for violation of restraining notices and for disobedience of the Court's Interim Order; and (2) denied *without prejudice* and with the right to renew Honeedew's application for turnover of the Buenos Aires Apartment to Honeedew's Argentine counsel in light of the Abadi's (and their counsel's) continued representations that they were in good faith working to sell their New York Apartment.

37.     The April Decision further fixed a hearing date to receive evidence and to ascribe the punishment for the Abadi's contemptuous conduct adjudicated by Motion Seq. 1 and Motion Seq 2 which took place on May 29, 2019, at which time *even more lawyers* appeared asserting to represent the Abadi's.  Following the May 29, 2019 hearing, the Court indicated that its contempt sanctions order would issue forthwith.

38.     By Decision and Order dated June 4, 2021 [NYSECF Doc. No. 250] ("June 4 Order") the state court ordered the following in relevant part:

> – the branch of the plaintiff's motion seeking injunctive relief is granted to the extent that the defendant judgment debtors shall turn over and cease the use of the property and data of Abadi & Co. (the "Company"), including providing the names of any person or entity known to the defendants to have possession of Company data, services, websites and any other property (inclusive of computers, cell phones, or other devices) belonging to the Company as of February 27, 2019, (and any related contact information for such person or entity), which includes: (i) ZOHO.com, (ii) Network Solutions, and (iii) email data and attachments which were purged, deleted,

9

transferred and/or disposed of by either Carlos Abadi or Barbara Abadi or their agents on or after February 27, 2019, from any accounts held by the Company as of February 27, 2019, including Company emails in accounts for Carlos Abadi, Barbara Abadi, and Jose Abadi, and all other persons or contractors having had an email address at the domain www.abadico.com as of February 27, 2019, for whom such an account was deleted, transferred and/or disposed of by Carlos Abadi, Barbara Abadi, or their agents; and it is further

*See* June 4 Order, 3-4.   Despite the June 4 Order, not a single piece of information or equipment has been provided by the Defendants.  Notice of entry of the June 4 Order has long been served and despite its existence, not a peep from the Judgment Debtors or their counsel.

39.    On or about November 15, 2018, the undersigned delivered an execution to the New York City Sheriff's Office for the shares in the Company.

40.    Following receipt of the execution, the New York City Sheriff levied upon the shares of the Company on November 27, 2018 (the "Levy").

41.    The Abadis have never complied with the State Court order and contempt proceedings that required, among other things, the turnover of financial information and records connected to Abadi & Co. Securities, including the USB or disks containing this information.

42.    Honeedew's damages increased as a result of its unnecessary legal fees and costs to prosecute routine orders of the State Court in spite of flagrant non-compliance in addition to the unnecessary accumulation of interest exceeding $1,100 *per day* on the millions of dollars outstanding on its Judgment prior to the bankruptcy filing.

43.    Honeedew purchased 100% of the interests in Abadi & Co. (the

"Company") at Sheriff's sale on February 27, 2019, memorialized by a February 27, 2019 Sheriff's Certificate of Sale.

44.    The Company is the parent and owner of several other companies and entities that were operated by the Abadi's, including ACGM, Inc. (short for Abadi & Company Global Markets, Inc.) ("ACGM"). As such, ACGM was also purchased by reason of the acquisition of the Company. Until April 2, 2017, ACGM was a broker-dealer active with FINRA.

45.    The Plaintiff received statements from ACGM regarding the funds place with ACGM and said statements are believed to be phony statements.

46.    In or about late 2015 or early 2016, the Plaintiff requested the return of the funds deposited with ACGM.  ACGM refused to honor the Plaintiff's request for the return of its funds.

47.    The Abadis informed the Plaintiff that they did not have the ability to pay the balance due to the Plaintiff.

48.    The Abadis offered to sell their residence, located at 900 Fifth Avenue, Apt. 2B, New York (the NY Apartment"), to satisfy payment of the Balance.

49.    The Abadis informed the Plaintiff that they did not own any assets of value other than the NY Apartment.

50.    The Plaintiff agreed to enter into a Promissory Note and Settlement Agreement with the Abadis that, among other things, provided for the

sale of the NY Apartment and provided for payment of the Balance from the proceeds of that sale.

51.     The agreement provided that if the Abadis defaulted under the agreement, the Plaintiff was authorized to file a confession of judgement for the Balance with the New York State Supreme Court, New York County (the "State Court") against the Abadis.

52.     The confessions of judgment and the settlement agreement were executed by the Abadis in their personal capacity.

53.     The Abadis defaulted under the settlement agreement and confessions of judgment were entered by the Clerk of the Court, New York State Supreme Court, New York County, on May 23, 2017 in the amount of amount of $4,655,622.33 (the "Judgment") against the Abadis.

54.     By letter signed on March 27, 2017, Barbara submitted a Letter of Acceptance, Waiver and Consent to FINRA for the purpose of proposing a settlement of her alleged FINRA rule violations.

55.     From May 2011 through April 2016, Barbara served as ACGM's Co-Chief Operating Officer.  From May 2016 through February 2017, Barbara served as ACGM's Chief Operating Officer.  At all times, during the time she served as Co-Chief Operating Office and Chief Operating Officer, Barbara was familiar with the financial operations of ACGM. FINRA alleged that ACGM and certain of its affiliates that were owned and controlled by Carlos engaged in what FINRA referred to as suspicious fund transfers.  Barbara refused to appear before

FINRA to respond to its allegations, she did not produce the documents requested by FINRA, and she agreed to be barred from associating with any FINRA member.

56.     Barbara's Letter of Acceptance stated she did not admit or deny any findings.

57.     Barbara testified under oath that she does not recall the circumstances that led to FINRA' the loss of her securities license and ban from the securities industry despite the fact that she was the Chief Operating Officer of the company. Barbara testified under oath that she has no idea why she was called to testify before FINRA.

58.     In June 2011, Carlos acquired ACGM and acted as its President and subsequent Chief Operating Officer.

59.     Carlos held the following securities licenses: Series 7 (General Securities Representative), Series 24 (General Securities Principal), Series 79 (Investment Banking Representative), and Series 62 (Uniform Securities Agent).

60.     ACGM filed a Uniform Termination Notice dated February 1,2017, reporting Carlos's voluntary termination from the ACGM.

61.     By letter signed on March 21, 2017, Carlos submitted a Letter of Acceptance, Waiver and Consent to FINRA for the purpose of proposing a settlement of alleged FINRA rule violations.

62.     FINRA alleged that ACGM and certain of its affiliates that were owned and controlled by Carlos engaged in certain suspicious fund transfers.

63.     Carlos refused to appear before FINRA to respond to the allegations, did not produce the documents requested by FINRA, and agreed to be barred from associating with any FINRA member.

64.     Carlos's Letter of Acceptance stated he did not admit or deny any findings.

65.     Upon information and belief, the Abadis informed FINRA that the Balance had been paid.

66.     Upon information and belief, the Abadis informed FINRA that all outstanding client balances had been paid and this false representation was designed to avoid the criminal prosecution of the Abadis.

67.     The Plaintiff has attempted to collect upon the Judgment since 2017.

68.     The Plaintiff estimates that it has expended close to $2,000,000.00 in legal fees and court costs in connection with its attempts to recover the funds misappropriated by the Abadis.

69.     After entry of the Judgment, the Plaintiff learned that Carlos owned an interest in an apartment, located at Parera 47, Primer Piso, Buenos Aires, Argentina (the "BA Apartment").

70.     Carlos disclosed his ownership interest in the BA Apartment in response to a subpoena issued by the Plaintiff after the entry of the Judgment.

71.     Carlos did not disclose his interest in the BA Apartment before

14

entering into the settlement agreement with the Plaintiff.

72.     Carlos's bankruptcy petition lists the value of the BA Apartment as $1,750,000.00.

73.     The BA Apartment is not encumbered by a mortgage note.

74.     Prior to Carlos' bankruptcy filing, Carlos asserted that his father, Jose Abadi (the "Father'), maintained a mortgage note and lien against the BA Apartment but the State Court found that no such secured claim by the Father existed.

75.     Carlos's assertion that his father had a mortgage and lien in the BA Apartment was false.

76.     Carlos has filed false statements of fact before the Argentinian Court regarding the validity of the Judgment.

77.     Carlos's Schedule D does not list a secured claim by his Father against the BA Apartment.

78.     The asset disclosure list provided by the Abadis to the Plaintiff before it entered into the Settlement Agreement and the Promissory Note did not disclose Carlos's interest in the BA Apartment.

79.     Excluding the payment of legal fees, the Plaintiff has paid no less than $339,000.00 to the Argentinian Court to protect its interest in the BA Apartment.

80.     The Plaintiff has incurred theses costs, in part, as a result of Carlos's false representations to the Argentinian Court that the Judgement is not valid.

81.     The State Court found that Carlos's assertion before the Argentinian Court that the Judgement is not valid was false.

1.The Abadis have failed to comply with numerous State Court orders.

1.The Abadis have asserted false statements of facts, under oath, before the State Court.

1.     The Abadis have been found in contempt of court, on more than one occasion,

before the State Court for failing to comply with State Court orders.

1.     The Abadis were committed by the State Court to incarceration in Rikers Island in

or about May 2024 as a result of their failure to comply with the State Court's order(s).

1.     The Father died in or about 2023.

1.     Upon information and belief, in or about September 2023, Carlos ceded his

right to claim his inheritance from the Father's estate to his mother, Fancia Luisa Guthman (the "Mother").

1.     Upon information and belief, the real property owned by the Father included, but

was not limited to, three parcels of real property located in Florida.

1.      Upon information and belief, the value of the Father's estate, on the date of his

death, was approximately $7,000,000.00.

1.      The NY Apartment was sold in or about 2022.

1.      The Abadis received a payment of their homestead exemption of approximately

$331,000.00 in or about December 2022.

1.      Neither Carlos or Barbara disclosed the receipt of these funds in their Statement

of Financial Affairs filed with the court.

**C.      Relevant facts Connected to Barbara J. Abadi's bankruptcy filing**

1.      Barbara filed a voluntary Chapter 7 petition on July 11, 2024 under Case No.

24-42873 (JMM).

2.      Barbara did not sign the petition that was filed with the court.

2.      Upon information and belief, Barbara's petition was signed electronically by Jennifer

Polich ("Polich").  Polich is one of Barbara's creditors and a close friend.

2.      Polich relied upon a Power of Attorney (the "POA") that was signed by Barbara on June

17, 2024, in support of her authority to file Barbara's bankruptcy petition.

17

2.      The POA does not authorize Polich to file a bankruptcy petition on the Debtor's behalf.

2.      Upon information and belief, Polich did not provide an original signature on the POA prior to Barbara's bankruptcy filing.

2.      Upon information and belief, the power of attorney was witnessed twelve days later on June 29, 2024, by Gretchen A. Oswalt, a resident of Oldsmar, Florida.

2.      Upon information and belief, the power of attorney was witnessed twelve days later on June 29, 2024, later by Kenneth Montgomery.

2.      Mr. Montgomery listed his residence as 3438 East Lake Road, Ste. 14, Palm Harbor, Florida.

3.      Upon information and belief, Barbara authorized the filing of her bankruptcy petition by her counsel, Pick & Zabicki LLP ("P & Z").

3.       Barbara's bankruptcy petition provided that on the day she filed her bankruptcy petition, she resided in Queens County at Rikers Island Jail Complex, 19-19 Hazen St., Rose Singer Center, Queens County, NY 11370.

3.      When Polich and Mr. Montgomery alleged that they witnessed or acknowledged that Barbara executed the POA, Barbara was incarcerated in Rikers Island.

3.      When she filed her bankruptcy petition, Barbara knew or should have known that the Rikers Island was not her legal residence and New York State was not her legal residence.

3.      Barbara's Statement of Financial Affairs ("SOFA") [ECF No. ] states that in the 180 days prior to her bankruptcy filing, she resided in the following locations: Buenos Aires, Argentina from January 2024 through April 30, 2024 and 3438 East Lake Road, Ste. 14, Palm Harbor, Florida ("Palm Harbor Address") from November 1, 2023 through December 31, 2023.

3.      Barbara did not assert in the SOFA that she was a New York resident in the 180 days preceding Barbara's bankruptcy filing.

3.      Barbara's Palm Harbor address appears to be a mailing address and is a commercial space rented for the receipt of mail.  Barbara did not reside at the Palm Harbor address listed in the SOFA.

3.      Barbara did not disclose the address in the SOFA she asserted was her residence

19

in Argentina.

3.      Mr. Montgomery cited the same Palm Harbor address as Barbara in the POA

and he did not reside at that address.

3.      Prior to Barbara's bankruptcy filing, her passport was confiscated by Judge Nancy

Bannon, N.Y.S. Supreme Court ("Judge Bannon") because Barbara posed a flight

risk to evade her obligations to the Plaintiff.

4.      On July 22, 2024, eleven days after Barbara filed her petition, Barbara filed an

amended petition, and supporting documents, that purportedly contained her original

signature.  The amended petition was dated July11, 2024.

4.      The amended Statement of Financial Affairs filed on July 22, 2024, states that Barbara

lived in Buenos Aires from January 2024 to April 2024 but does not disclose her address

in that location.  4.        Barbara does not list any beneficial or actual interest in real property in her

bankruptcy schedules of assets.

4.      On Schedule G of the amended schedules, Barbara admits that the address that

Mr. Montgamery and Barbara listed as a residence, 3438 East Lake Road, Ste. 14,

Palm Harbor, Florida, is a mail room and not a residence.

**C.**    **Relevant facts Connected to Carlos A. Abadi's bankruptcy filing**

1.    On August 29, 2024, Carlos filed a voluntary Chapter 7

petition under Case No.

24-24415.

2.    Carlos affirmed that his residence was Rikers Island Jail

Complex, 19-19 Hazen

Street, East Elmhurst, N.Y.  11370.

3.    Carlos listed his mailing address as 3438 East Lake Road,

Ste. 14, Palm Harbor,

Florida.

3.    Carlos did not reside in Palm Harbor on the date of the bankruptcy

filing.

1.    Carlos swore that but for his incarceration at Rikers Island,

he resided inArgentina

on the date of his bankruptcy filing.

1.    The Schedules of Assets and Liabilities filed by Carlos as

Ecf No. 1 provide that

Carlos has no interest in any non-publicly-traded stock and interests in

incorporated and unincorporated businesses, include an interest in an LLC,

partnership and joint venture.

1.    The Schedules of Assets and Liabilities filed by Carlos as

Ecf No. 1 provide that

21

no one owes him any money.

1.     The Schedules of Assets and Liabilities filed by Carlos as Ecf No. 1 provided that

he has no interest in property that is due to him from someone who died.

1.     The Statement of Financial Affairs ("SOFA") filed as Ecf No. 1 at Question

5 provides that Carlos did not receive income from any source in 2022 other than his compensation and did not receive any personal loans in 2024.

1.     The SOFA at Question 8 provides that Carlos did not transfer any property within

one year of the bankruptcy filing on account of a debt the benefitted an insider.

1.     The SOFA at Question 18 provides that Carlos did not transfer any property with

the two years preceding the bankruptcy filing.

1.     The SOFA at Question 22 provides that Carlos does not have property in a storage

unit.

1.     The SOFA at Question 27 provides that within the four years preceding the

bankruptcy filing, Carlos was not self-employed, a member of an LLC, and officer or director or a corporation.

1.      The Plaintiff filed a motion for relief, docketed as Ecf No 8

on August 13, 2024,

that asserted Carlos's bankruptcy schedules and SOFA contained material

omissions.

2.      On October 10, 2024, Carlos filed amended Schedules A/B

and E/F as Ecf no. 28.

By Declaration dated October 8, 2024, Carlos asserted that his schedules were

amended to provide the following: disclose the existence of a contingent

$2,000,000.00 success fee, disclose legal fee retainers, remove the unsecured

claim of the estate of his Father, and disclose his business valuation license.

1.      On November 1, Carlos filed second amended schedules as

Ecf No. 38.  By

declaration dated November 4, 2024, Carlos asserted that the second amended

schedules were filed to provide more detail regarding the nature and value of the

paintings he listed in Schedule A/B.

1.      Carlos has not filed an amended SOFA with the court.

1.      Carlos swore he was a manger of Decision Boundaries, and

entity created by his

Father, and he worked for this entity from 2021 through 2024.

1.      Carlos swore that he is a director of a holding company that

owns Village

Roadshow Entertainment Group

23

2.      Carlos swore that he is also a director of the operating company of Village Roadshow Entertainment Group.

3.      Carlos swore he is a member of a non-operating non-profit corporation known as the Samawal Foundation.

1.The debt owed to the Plaintiff arose from the Abadis' misuse and misapproriation of the Plaintiff's funds.

2. The Abadis provided the Plaintiff with false statements of account and the Plaintiff relied on those statements as accurate and true in continuing to do business with the Abadis.

3.The Abadis provided the Plaintiff with a false list of assets when they induced the Plaintiff to enter into the promissory note and settlement agreement.

1.The Plaintiff justifiably relied upon the accuracy of the list of assets that was used to induce the Plaintiff to enter into the settlement agreement.

1.The Abadis knew these material misstatements of fact were false when presented to the Plaintiff.

1.The Plaintiff  suffered significant damages as a result of Abadi's fraud.

24

1.As a consequence of the foregoing, the Debtor is liable to Honeedew for

damages in the amount of $_____, together with interest thereon from

_____, 20xx (the "Debt").

1.As a consequence of the foregoing, the Abadis cannot discharge the Debt and

the Plaintiff is entitled to a judgment in the amount of the Debt and holding that

the Debt is not dischargeable and remains an obligation that the Plaintiff may

enforce against the Abadis, regardless of whether the Abadis receive a discharge

in their bankruptcy cases.

**FIRST CAUSE OF ACTION AS TO CARLOS AND BARBARA**
[11 U.S.C. § 523(a)(2)(A)]

25.    The Plaintiff realleges and incorporates herein the allegations and

averments

stated in paragraphs 1 through 24.

1.    11 U.S.C. § 523(a)(2)(A) provides in pertinent part that: "A

discharge under

section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an

individual debtor from any debt . . . (2) for money, property, services, or an

extension, renewal, or refinancing of credit, to the extent obtained by . . . (A) false

pretenses, a false representation or actual fraud, other than a statement respecting

the debtor's or an insider's financial condition."

1.    The elements of a cause of action for fraud are: (1) a material

misrepresentation of

fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the

plaintiff; and (5) damages.

1. The debt owed to the pon the accuracy of the list of assets that was used to induce the Plaintiff to enter into the settlement agreement.

1. The Abadis knew these material misstatements of fact were false when presented

to the Plaintiff.

1. The Plaintiff  suffered significant damages as a result of the Abadi's fraud.

1. As a consequence of the foregoing, the Debtor is liable to Honeedew for damages in the amount o of no less than $15,961,554.70 as of September 17, 2024, as set forth in the Proof of Claim filed by the Plaintiff with the court on September 18, 2024 (the "Debt").

1. As a consequence of the foregoing, the Abadis cannot discharge the Debt and the Plaintiff is entitled to a judgment in the amount of the Debt and holding that the Debt is not dischargeable and remains an obligation that the Plaintiff may enforce against the Abadis, regardless of whether the Abadis receive a discharge in their bankruptcy cases.

## SECOND CAUSE OF ACTION AS TO CARLOS AND BARBARA
[11 U.S.C. § 523(a)(4)]

1.      11 U.S.C. 523(a)(4) provides in pertinent part that: "A

discharge under section 727,

1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor

from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity,

embezzlement, or larceny."

1.      As broker-dealers and the Plaintiff's agent, the Abadis had a

fiduciary relationship

with the Plaintiff and owed it a duty of loyalty and were prohibited from acting in any

manner inconsistent with their agency or trust and were at all times bound to exercise

the utmost good faith and loyalty in connection with the management of the

Plaintiff's funds.

1.      By entering into the promissory note and agreement, and by

agreeing to the entry

of a confession of judgment against them personally, the Abadis acknowledged their

personal liability to the Plaintiff.

1.      The Plaintiff suffered significant damages as a direct result of

the Abadis'

misconduct.

1.      As a consequence of the foregoing, the Abadis cannot

discharge the Debt and

Plaintiff is entitled to a determination that the Debt is not dischargeable and remains an obligation that Plaintiff may enforce against the Abadis, regardless of whether the Abadis receive a discharge in their bankruptcy cases.

### THIRD CAUSE OF ACTION AS TO CARLOS AND BARBARA
[11 U.S.C. § 523(a)(6)

1. 11 U.S.C. 523(a)(6) provides in pertinent part that: "A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

1. The Abadis willfully and knowingly transferred a portion of the Plaintiff's funds without its knowledge or consent and in violation of their contractual and fidcuiary duties to the Plaintiff.

2. When the Plaintiff requested the return of its funds, the Abadis refused to return the funds.

1. The Plaintiff did not obtain a return of a portion of the funds until it was forced to retain legal counsel to compel the return.

1. The Abadis transferred the Plaintiff's funds for their personal use or an improper

28

purpose that was outside the scope of their duties.

1.      The Abadis knew that their misuse of the Plaintiff's funds

would result in

significant harm to the Plaintiff and result in damages.

1.      The Abadis conduct willful and malicious and would cause

injury to the Plaintiff.

1.       As a consequence of the foregoing, the Abadis cannot

discharge the Debt and

Plaintiff is entitled to a determination that the Debt is not dischargeable and

remains an obligation that Plaintiff may enforce against the Abadis, regardless of

whether the Abadis receive a discharge in their bankruptcy cases.

### FOURTH CAUSE OF ACTION AS TO CARLOS
[11 U.S.C. § §727(a)(2)(A)]

1.      11 U.S.C. §727(a)(2)(A) provides in pertinent part that:

"The court shall grant the

debtor a discharge, unless— . . . (2) the debtor, with intent to hinder, delay, or

defraud a creditor or an officer of the estate charged with custody of property

under this title, has transferred, removed, destroyed, mutilated, or concealed, or

has permitted to be transferred, removed, destroyed, mutilated, or concealed. . .

(A) property of the debtor, within one year before the date of the filing of the

petition."

1.      Carlos concealed the transfer of his inheritance from his

Father's estate within

one year prior to the bankruptcy filing.

2.      Carlos's act of concealment was done with the intent to

defraud creditors and

place his inheritance beyond the reach of non-insider creditors.

1.              As a consequence of the foregoing, Carlos should be

denied a discharge in

bankruptcy pursuant to 11 U.S.C. 727(a)(2)(A).

### FIFTH CAUSE OF ACTION AS TO CARLOS
[11 U.S.C. § §727(a)(4)(A)]

1.      11 U.S.C. 727(a)(4)(A) provides, in relevant part, that:

"The court shall grant the

debtor a discharge, unless— . . . (4) the debtor knowingly and fraudulently, in or

in connection with the case— . . . (A) made a false oath or account."

1.      Carlos made a false oath when he failed to disclose in his

Schedules of Assets

and Statement of Financial Affairs (collectively, the Schedules") the

relinquishment of his inheritance from his Father's estate.

1.      Carlos made a false oath when he failed to disclose in his

Schedules that he was

a director of or manager of business entities and holds an interest in a non-profit

corporation.

   1.  Carlos made a false oath when he failed to disclose in his
         Schedules all of the

income he received in 2022 and 2024.

   1.  Carlos made a false oath when he failed to disclose in his
         Schedules his

contingent claim for a $2,000,000.00 commission from the Country of Lebanon

until the issue was raised by the Plaintiff.

   1.  Carlos made a false oath when he stated in his Schedules
         that he had no interest in

property that is due to him from someone who died.

   1.  Upon information and belief, Carlos ceded his inheritance
         to satisfy a debt to an

insider.  Carlos made a false oath when he failed to disclose in his Schedules that

he transferred  property within one year of the bankruptcy filing on account of a

debt that benefitted an insider.

   1.  Carlos made a false oath when he stated in his Schedules
         that he did not transfer

any property within the two years preceding the bankruptcy filing.

31

1. Carlos made a false oath when he stated in his Schedules that within the four years preceding the bankruptcy filing, Carlos was not self-employed, a member of an LLC, and an officer or director of a corporation.

1. Carlos made a false oath when he stated he was a resident of Queens County on the date of his bankruptcy filing.

1. Carlos's intentional omission of such material facts constitutes a false oath and account and renders his debt non-dischargeble pursuant to 11 U.S.C. § 727(a)(4)(A).

## SIXTH CAUSE OF ACTION AS TO BARBARA
[11 U.S.C. § §727(a)(4)(A)]

1. The Plaintiff realleges and incorporates herein the allegations and averments stated in paragraphs 1 through 28.

1. 11 U.S.C. 727(a)(4)(A) provides, in relevant part, that: "The court shall grant the debtor a discharge, unless— . . . (4) the debtor knowingly and fraudulently, in or in connection with the case— . . . (A) made a false oath or account."

1. Barbara made a false oath when she failed to disclose in her Schedules of Assets

32

and Statement of Financial Affairs (collectively, the Schedules") she stated in her

Schedules that she did not transfer any property within the two years preceding

the bankruptcy filing.

1.      Barbara made a false oath when she stated she was a

resident of Queens County

on the date of his bankruptcy filing.

1.      Barbara's intentional omission of such material facts

constitutes a false oath

and account and renders her debt non-dischargeble pursuant to 11 U.S.C. §

727(a)(4)(A).

### SEVENTH CAUSE OF ACTION AGAINST BARBARA AND CARLOS

### (11 U.S.C. § 523(a)(19) – SECURITIES RELATED FRAUD)

1.      Plaintiff repeats and realleges all proceeding paragraphs as if fully

restated herein.

1.      The Abadi's sold securities to Plaintiff being fully aware of

significant risks involved in the investment.  Defendant did not

disclose these risks, but rather secreted them from Plaintiff.

Plaintiff repeats and realleges all proceeding paragraphs as if fully

restated herein.

1.      In addition to violating state and federal securities laws, Defendant

committed common law fraud, deceit and manipulation in

connection with the sale of the securities.

Further, Carlos  is a control person and therefore was personally responsible in

addition to Barbara in connection with their role at the Company and its

subsidiaries.

Barbara has refused to comply with multiple court orders to turn over storage

discs and property that may lead the Plaintiff to the recovery of its funds.

The Abadi's obligations owing to Plaintiff for their violations of securities laws

and/or common law fraud, deceit and manipulation should not be discharged in

her Bankruptcy Case.

### <u>RESERVATION OF RIGHTS</u>

1.      The Plaintiff 's investigation into the Abadis's assets and financial

 affairs is

ongoing. The Section 341 Meeting of Creditors was continued and not concluded

due to the Abadis's failure to provide the Chapter 7 Trustee with the documents

he requested before the meeting.  The Plaintiff intends to conduct discovery and

expressly reserves the right to amend and/or supplement the factual bases and/or

the relief requested by this Complaint.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter a

judgment against the Abadis (i) denying their discharge pursuant to Bankruptcy

Code Sections 523(a) and 727(a) as set forth above and (ii) granting the Plaintiff

such other and further relief as is just.

New York, New York
December 18, 2024

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter a
judgment against the Abadis (i) denying their discharge pursuant to Bankruptcy
Code Sections 523(a) and 727(a) as set forth above and (ii) granting the Plaintiff
such other and further relief as is just.
New York, New York
December 18, 2024

_S/Norma E. Ortiz_
Ortiz & Ortiz LLP
287 Park Avenue So, Ste. 337
New York, New York 10010
email@ortizandortiz.com
Tel. 718.522.1117
_Co-counsel to Honeedew Investment LLC_

_Eric S. Medina_
Medina Law Firm
641 Lexington Ave 13th floor
New York, NY 10022
Tel. (212) 404-1742
_Co-counsel to Honeedew Investment LLC_