**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br> BARBARA J. ABADI and CARLOS A. ABADI,<br><br>　　　　　Debtors. | Case No. 24-42873-jmm<br><br>Chapter 7 |
| HONEEDEW INVESTING LLC.,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br>CARLOS A. ABADI and BARBARA J. ABADI,<br><br>　　　　　Defendants. | Adv. Proc. No. 24-01111-jmm<br><br>**AMENDED COMPLAINT TO BAR DISCHARGEAND DISCHARGEABILITY OF DEBTS** |

## COMPLAINT

Honeedew Investing LLC, successor by merger to Honeedew Investing Ltd. ("Plaintiff" or "Honeedew") complaining of Defendants Carlos A. Abadi ("Carlos") and Barbara J. Abadi ("Barbara") (collectively the "Abadis") by and through their undersigned counsel allege and say as follows:

## PRELIMINARY STATEMENT

1.      The bankruptcy discharge of a debtor's debts is extraordinary relief which should be afforded to the honest but unfortunate debtor. However, the Abadis cannot be viewed as honest debtors and their discharge should be denied for myriad reasons. As set forth in greater

1

detail below, the Abadis, among other things, (i) committed fraud and a defalcation of their fiduciary duties to the Plaintiff by transferring and improperly misusing the funds placed with them as the Plaintiff's broker-dealer and agent; (ii) failed to disclose transfers of assets prior to their bankruptcy filings and actively concealed; and (iii) made false oaths and accounts in connection with their bankruptcy filings; and (iv) committed wilfull and malacious injuries to the Plaintiff, all of which necessitate the denial of their discharge.

## **NATURE OF THE ACTION**

2.      This action is brought pursuant to Rules 7001(6) and 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 523(a)(4),(6), and (19) and Section 727(a) of title 11, United States Code, section 1010 et seq. (the "Bankruptcy Code") to avoid discharge of the Plaintiff's debts by the Abadis.

## **JURISDICTION AND VENUE**

3.      The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§157(a) and (b), and 1334(b).

4.      This is a core proceeding under 28 U.S.C. §§157(b)(2)(A), (B), (F) and (O). Venue is proper in this district under 28 U.S.C. §1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.  This Court does not have jurisdiction to enter a final judgment against the Abadis on claims raised herein. The Plaintiff does not consent to this Court's jurisdiction to enter a final judgment in this proceeding.

## **PARTIES TO THE ACTION**

5.      At all times hereinafter mentioned, Plaintiff is a Delaware LLC.

6.      Barbara is an individual who at the time of the filing of her petition swore she resided  at the jail complex commonly known as Rikers Island, located in Queens County, New York.

7.      Carlos is an individual who at the time of the filing of his petition swore he resided at at the jail complex commonly known as Rikers Island, located in Queens County, New York.

### FACTS COMMON TO ALL COUNTS

8.      Plaintiff is a judgment creditor of the Abadi's stemming from debts incurred by the Abadi's as a result of their failure and/or refusal to have their companies honor withdrawal requests of funds entrusted to the Abadi's and their companies totalling $14,603,408.23.

9.      In an effort to recocover the sums entrusted to the Abadi's, Honeedew entered into agreements with the Abadi's by which Honeedew recovered a portion of the sums pilfered by the Abadi's leaving a balance of $4,655,622.23 that would later be embodied in a judgment dated and entered on May 17, 2017 (the "Judgment") which was made confession.

10.     In connection therewith, Honeedew was reassured that all of the Abadi's assets would put to repay Honeedew from available assets of the Abadi's.

11.     This included the Abadi's residence in Manhattan a lavish cooperative apartment located at 900 Fifth Avenue, Apt. 2d, New York, New York (the "NY Apartment") thought at the time to be worth in excess of $4.5 million dollars.

12.     Unbeknonwst to Honeedew, the Abadi's concealed Carlos's ownership of and Barbara's interest in a multimillion-dollar luxury apartment in Buenos Aires Argentina ( the "BA

3

Apartment") thought to be worth in excess of $2.5 million at the time of its discovery a year later.

13.     At the time of the entry these arrangements the Abadi's resided in a lavish New York City apartment located at 900 Fifth Avenue, Apt. 2d, New York, New York (the "NY Apartment").

14.     These actions were precipated by actions that took place in or about 2014 through 2016, when the Abadi's were licensed in the securities industry and subject to the regulation of the Financial Industry Regulatory Authority ("FINRA") through which they operated several companies, including Abadi & Co.

15.     FINRA is a government-authorized not-for-profit organization that oversees U.S. broker-dealers. A broker-dealer is in the business of buying or selling securities on behalf of its customers or its own account or both.

16.     As a result of what FINRA called "suspicious transfers" the Abadi's came under the scrutiny of FINRA for transferring manuy millions of dollars to different individuals, including Jose Abadi, Carlos' father.

17.     Upon information and belief, in connection with the Abadi's debts to Honeedew, Carlos made false representations to Honeedew using electronic means including providing fake wire transfer and account information.

18.     From May 2011 through April 2016, Barbara served as ACGM's Co-Chief Operating Officer along with Carlos.  From May 2016 through February 2017, Barbara served as ACGM's Chief Operating Officer.

19.     At all times, during the time she served as Co-Chief Operating Office and Chief Operating Officer, Barbara was familiar with the financial operations of ACGM.

20.     Both of the Abadi's were expelled from the securities industry for fialing and/or refusing to provide information to FINRA regarding their securities dealings.

21.     Upon information and belief, the Abadis informed FINRA that all sums owed to Honeedew had been repaid to avoid criminal prosecution of the Abadis by securities regulators.

22.     Following the entry of the Judgment, Honeedew was forced to commence collection proceedings in the New York State Supreme Court.

23.     Under the laws of the State of New York, CPLR Article 52, which governs the enforcement of judgments, enables creditors to commence enforcement procedures if the debtor does not pay within a reasonable period which is 30 days.

24.     The sole remedy for the failure to comply with a judgment under New York law is the Court's contempt procedure under CPLR Article 52.

25.     Following refusal to respond a judgment collection subpoenas, Honeedew was caused to file its first request for judicial intervention in the New York Suprmee Court on September 20, 2018, after learning of rampant false swearing by the Abadi's in partial response to Honeedew's judgment collection subpoena.

26.     In that partial response, Honeedew learned for the first time of the existence of the BA Apartment.

27.     Honeedew sought three forms of relief in its first motion to the NY Supreme Court: (a) an order of contempt for false swearing and interference with collection of the

Judgment; (b) on order of contempt for making false allegations of fact in a foreign Court (Argentina) denying the validity, genuineness, and unpaid status of the open Judgment before the Argentina court; and (c) for turnover of the BA Apartment to Honeedew's agent in Argentina for the purpose of liquidating that unit to ensure the partial satisfaction of the Judgment.

28.     Honeedew's first motion in the NY Supreme Court sought to cause the Abadi's to cease and desist from making false statements that the Judgment was invalid, phony, or a fake which they caused their Argentine lawyer, Frederico Jimenze Herrara to interpose in Argentina to defend against Honeedew's domestication of the Judgment in Argentina to expose the BA Apartment to a sale in partial satisfaction of the Judgment.

29.     During appearances before the NY Surpeme Court, the New York Surpeme Court made clear to the Abadi's it expected that the Abadi's could quickly sell their New York apartment to pay the Judgment.

30.     Unbeknownest to Honeedew during that time, the Abadi's had turned down offers to purchase their New York Apartment of over four million dollars.

31.     When Honeedew commenced its domestication proceedings in Argentina, it learned that the Abadi's were renting the apartment for $7,000 per month.

32.     Unbeknownst to Honeedew, Carlos and Barbara entered into an agreement with lawyer in Argentina which provided that they would pay to their lawyer 1/3 of the amount of Honeedew's Judgment against the Abadi's, in exchange for their lawyer preventing Honeedew's enforcement of its Judgment against the Abadis in Argentina.

33.     Both Carlos and Barbara authorized their attorney to act on their behalf by way of

power of attorney executed in their Argentine lawyer's favor.

34.     During the pendency of Honeedew's first motion to the New York Supreme Court, Honeedew was forced to file a second application, on October 5, 2018 seeking a Temporary Restraining Order ("TRO"): (1) preventing the Abadi's from transferring, hypothecating, or disposing of non-exempt real or personal property anywhere; (2) imposing an additional contempt sanction for further false swearing and interference by the Abadi's having caused to be filed an "emergency demand"[1] in the nation against of Argentina to lift the then preliminary restraint against the BA Apartment.

35.     Upon information and belief, the Abadi's escalated their false swearing efforts in Argentina as a result Honeedew's first application to the New York Supreme Court.

36.     Honeedew's second application further sought to prevent the Abadi's from selling the BA Apartment for which a listing was located at that time.

37.     On November 28, 2018, the Abadi's and Honeedew appeared before the State Supreme Court whereupon the Supreme Court Ordered the Abadi's to execute affidavits and deliver them to Honeedew in which they disavowed the false swearing they made in Argentina courts.

38.     The Abadi's refused and failed to deliver the affidavits concerning their retraction of false statements in Argentina by the deadline imposed by the New York Supreme Court.

39.     Instead, the Abadi's withheld the affidavits so that they were not available in Argentina court proceedings which led to the dismissal of Honeedew's domestication

proceedings in Argentina and the forfeiture of the justice exceeding several hundred thousand dollars that Honeedew had to pay to commence the domestication proceeding in Argentina.

40.    Honeedew was caused to reinitiate the proceedigns in Argentina and pay another justice tax.

41.    The parties appeared before the State Suprmee Court on January 16, 2019, at which time the Supreme Court ruled that that the failure to abide by its Order was a contempt fo court.

42.    Throughout this period, the Abadi's concealed their assets and income through Abadi & Co. and diverted monies to themselves personally.

43.    Honeedew continued its efforts to collect upon the Judgment from the Abadis while awaiting entry of orders on its first two motions and conducted an execution sale through the Office of the New York County Sheriff ("Sheriff") upon Mr. Abadi's sole ownership interest in the company, Abadi & Co. (the "Company").

44.    On February 27, 2019, the Sheriff conducted an auction sale (the "Auction") of the shares of Abadi & Co., Honeedew was the successful high bidder.

45.    Upon acquiring ownership of the Abadi & Co, Honeedew made demand made demand to the Abadi's and their-then counsel, Duffy & Amedeo LLP ("D&A"), for all written correspondence to and from D&A and the Abadi & Co. for records.

46.    The Demand further required the Abadi's to immediately turn over all password and login information for emails, bank accounts, and the like, and the return of all Company

---

[1] This required Honeedew's Argentina counsel to "show cause" by October 10, 2018 why the

property in the Abadi's possession so that its new owner could meet all day-to-day responsibilities relating to the Company including compliance with tax filings and the like.

47.    Honeedew hoped to through these records ascertain the whereabouts of the millions of dollars the Abadi's transferred and concealed from customer accounts, including Honeedew's.

48.    The Abadi's refused to comply with the Demand and caused the Plaintiff to file a third motion which sought a TRO and an order requiring: (a) the Abadi's to turnover all converted property of the Company in their possession and/or their agents' possession.

49.    On March 22, 2019, the Suprmee Court entered a TRO on that motion and On March 26, 2019, the Abadi's, *then* acting through Brown Rudnick LLP as their legal counsel, filed an emergent appeal to the First Department of the March 22, 2019 Order. That appeal ulimtatley upheld the Supreme Court's decision and directed the Abadi's to immediately turnover the property and information sought by Honeedew.  The Abadi's failed to comply materially with those Orders instead withholding computers, phones, data, and other property (which continue to be held until the date of this amended complaint).

50.    In a April 17, 2019 decision, the Supreme Court found that the Abadi's were in contempt of court that they should be punished for violation of restraining notices and for disobedience of the Court's orders; and in which the Supreme Court without prejudice Honeedew's request for a  receiver for the BA Apartment.

51.    By a Decision and Order dated June 4, 2021 the New York State Suprmee Court

---

Abadi's false request should not be granted.

orderd the Abadi's to do the following in connection with Honeedew's third motion to the Supreme Court:

> – the branch of the plaintiff's motion seeking injunctive relief is granted to the extent that the defendant judgment debtors shall turn over and cease the use of the property and data of Abadi & Co. (the "Company"), including providing the names of any person or entity known to the defendants to have possession of Company data, services, websites and any other property (inclusive of computers, cell phones, or other devices) belonging to the Company as of February 27, 2019, (and any related contact information for such person or entity), which includes: (i) ZOHO.com, (ii) Network Solutions, and (iii) email data and attachments which were purged, deleted, transferred and/or disposed of by either Carlos Abadi or Barbara Abadi or their agents on or after February 27, 2019, from any accounts held by the Company as of February 27, 2019, including Company emails in accounts for Carlos Abadi, Barbara Abadi, and Jose Abadi, and all other persons or contractors having had an email address at the domain www.abadico.com as of February 27, 2019, for whom such an account was deleted, transferred and/or disposed of by Carlos Abadi, Barbara Abadi, or their agents; and it is further

Despite the June 4 Order, the Abadi's through their counsel turned over only email passwords but refused to turnover equipment and the additional information for programs like ZOHO.com and backup discs made by the Abadi's prior to turnover of data to Honeedew which the Abadi's deleted from Abadi & Co's email servers.

52.     Following the execution by Honeedew against Abadi & Co, Carlos fraudulently conspired with his father Jose Abadi to form a company called "Decision Boundaries" in which he assume the role of managing director.

53.     Through Decision Boundaries, Carlos caused that company to received transfers

of money from numerous sources, including Lebanon, amountint to over $1 million dollars in the year 2020.

54.     Decision Boundaries also was used by Carlos and other family members to pay for transfers to numerous swiss bank accounts for, among others, the Abadi's lawyer in Argentina in addition supporting frequent charges to the online adult website "only fans."

55.     During this time and continuing until the present, Carlos received and as recently as this 341 meeting continues to receive $10,000.00 per month from Village Road Show Entertainment for "board consulting."

56.     Honeedew's damages increased as a result of its unnecessary legal expenses and costs to prosecute routine orders in the State Supreme Court in spite of flagrant non-compliance in addition to the unnecessary accumulation of interest exceeding $1,100 *per day* on the millions of dollars outstanding on its Judgment prior to the bankruptcy filing.

57.     The Plaintiff estimates that it has expended close to $2,000,000.00 in legal fees and court costs in connection with its attempts to recover the funds misappropriated by the Abadis.

58.     In proceedings before the New York State Supreme Court, it was information surfaced identigying the Abadi's as having established bank accounts in the nation of Lebanon indicating a net worth of over 10 million dollars.

59.     These statements were provided after the entry of the Judgment against them.

60.     Lebanon is a nation subject to sanctions and restrictions by the United States Office of Foreign Assets control ("OFAC").

61.    Carlos swore under oath that he is owed a success from Lebanon of approximately two million dollars.

62.    Prior to Carlos' bankruptcy filing, Carlos asserted that his father, Jose Abadi maintained a mortgage note and lien against the BA Apartment but the New York State Court those assertions to be false.

63.    Excluding the payment of legal fees, the Plaintiff has paid no less than $339,000.00 to the Argentinian courts to protect its interest in the BA Apartment.

64.    As a result of the Abadi's false swearing, the Abadi's Argentine laweyrs have asseted a legal fee claim against Honeedew for over $500,000.00 which the Argentine courts upheld.

65.    The Plaintiff has incurred theses costs as a result of Carlos's false representations to the Argentinian court that the Judgement is not valid.

66.    The State Supreme Court found that the Abadi's assertion before the Argentinian court that the Judgement is not valid was false and violiated CPLR restraining notices.

67.    Upon information and belief, in or about September 2023, Carlos ceded his right to claim a multi-million dollar inheritance from the his father Jose Abadi's estate to his mother, Fancia Luisa Guthman.[2]

68.    Upon information and belief, the property owned by his father included, but was not limited to, three parcels of real property.

69.    Upon information and belief, the value of his father's estate, on the date of his

---

[2] Whom  the Abadi's idenfity as a creditor in their bankruptcy cases.

death, was approximately $7,000,000.00.

70.      The Abadis received a payment of their homestead exemption of approximately $331,000.00 in or about December 2022 followign the sale of their New York Apartment for far below fair market value.

71.      Neither Carlos or Barbara disclosed the receipt of these funds in their Statement of Financial Affairs filed with the court.

72.      Barbara filed a voluntary Chapter 7 petition on July 11, 2024 under Case No. 24-42873 (jmm).

73.      Barbara did not sign the petition that was filed with the court. Upon information and belief, Barbara's petition was signed electronically by Jennifer Polich ("Polich"). Polich is one of Barbara's creditors and a close friend.

74.      Polich relied upon a Power of Attorney (the "POA") that was signed by Barbara on June 17, 2024, in support of her authority to file Barbara's bankruptcy petition.

75.      The POA does not authorize Polich to file a bankruptcy petition on the Debtor's behalf.

76.      Upon information and belief, Polich did not provide an original signature on the POA prior to Barbara's bankruptcy filing.

77.      Upon information and belief, the power of attorney was witnessed twelve days later on June 29, 2024, by Gretchen A. Oswalt, a resident of Oldsmar, Florida.

78.      Upon information and belief, the power of attorney was witnessed twelve days later on June 29, 2024, later by Kenneth Montgomery.

79.     Mr. Montgomery listed his residence as 3438 East Lake Road, Ste. 14, Palm Harbor, Florida.

80.     Upon information and belief, Barbara authorized the filing of her bankruptcy petition by her counsel, Pick & Zabicki LLP ("P & Z").

81.     Barbara's bankruptcy petition provided that on the day she filed her bankruptcy petition, she resided in Queens County at Rikers Island Jail Complex, 19-19 Hazen St., Rose Singer Center, Queens County, NY 11370.

82.     When Polich and Mr. Montgomery alleged that they witnessed or acknowledged that Barbara executed the POA, Barbara was incarcerated in Rikers Island.

83.     When she filed her bankruptcy petition, Barbara knew or should have known that the Rikers Island was not her legal residence and New York State was not her legal residence.

84.     Barbara's Statement of Financial Affairs ("SOFA") states that in the 180 days prior to her bankruptcy filing, she resided in the following locations: Buenos Aires, Argentina from January 2024 through April 30, 2024 and 3438 East Lake Road, Ste. 14, Palm Harbor, Florida ("Palm Harbor Address") from November 1, 2023 through December 31, 2023.

85.     Barbara did not assert in the SOFA that she was a New York resident in the 180 days preceding Barbara's bankruptcy filing.

86.     Barbara's Palm Harbor address appears to be a mailing address and is a commercial space rented for the receipt of mail.  Barbara did not reside at the Palm Harbor address listed in the SOFA.

87.     Barbara did not disclose the address in the SOFA she asserted was her residence

in Argentina.

88.    Mr. Montgomery cited the same Palm Harbor address as Barbara in the POA and he did not reside at that address.

89.    Prior to Barbara's bankruptcy filing, her passport was confiscated by Judge Nancy Bannon, N.Y.S. Supreme Court ("Judge Bannon") because Barbara posed a flight risk to evade her obligations to the Plaintiff.

90.    On July 22, 2024, eleven days after Barbara filed her petition, Barbara filed an amended petition, and supporting documents, that purportedly contained her original signature. The amended petition was dated July11, 2024.

91.    The amended Statement of Financial Affairs filed on July 22, 2024, states that Barbara lived in Buenos Aires from January 2024 to April 2024 but does not disclose her address in that location.

92.    Barbara does not list any beneficial or actual interest in real property in her bankruptcy schedules of assets.

93.    On Schedule G of the amended schedules, Barbara admits that the address that Mr. Montgamery and Barbara listed as a residence, 3438 East Lake Road, Ste. 14, Palm Harbor, Florida, is a mail room and not a residence.

94.    On August 29, 2024, Carlos filed a voluntary Chapter 7 petition under Case No. 24-24415.

95.    Carlos affirmed that his residence was Rikers Island Jail Complex, 19-19 Hazen Street, East Elmhurst, NY 11370

96.     Carlos listed his mailing address as 3438 East Lake Road, Ste. 14, Palm Harbor, Florida.

97.     Carlos did not reside in Palm Harbor on the date of the bankruptcy filing.

98.     Carlos swore that but for his incarceration at Rikers Island, he resided inArgentina on the date of his bankruptcy filing.

99.     The Schedules of Assets and Liabilities filed by Carlos as Ecf No. 1 provide that Carlos has no interest in any non-publicly-traded stock and interests in incorporated and unincorporated businesses, include an interest in an LLC, partnership and joint venture.

100.    The Schedules of Assets and Liabilities filed by Carlos as Ecf No. 1 provide that no one owes him any money.

101.    The Schedules of Assets and Liabilities filed by Carlos as Ecf No. 1 provided that he has no interest in property that is due to him from someone who died.

102.    The Statement of Financial Affairs ("SOFA") filed as Ecf No. 1 at Question 5 provides that Carlos did not receive income from any source in 2022 other than his compensation and did not receive any personal loans in 2024.

103.    The SOFA at Question 8 provides that Carlos did not transfer any property within one year of the bankruptcy filing on account of a debt the benefitted an insider.

104.    The SOFA at Question 18 provides that Carlos did not transfer any property with the two years preceding the bankruptcy filing.

105.    The SOFA at Question 22 provides that Carlos does not have property in a storage unit. The SOFA at Question 27 provides that within the four years preceding the bankruptcy

16

filing, Carlos was not self-employed, a member of an LLC, and officer or director or a corporation.

106.    The Plaintiff filed a motion for relief, docketed as Ecf No 8 on August 13, 2024, that asserted Carlos's bankruptcy schedules and SOFA contained material omissions.

107.    On October 10, 2024, Carlos filed amended Schedules A/B and E/F as Ecf no. 28. By Declaration dated October 8, 2024, Carlos asserted that his schedules were amended to provide the following: disclose the existence of a contingent $2,000,000.00 success fee, disclose legal fee retainers, remove the unsecured claim of the estate of his father and disclose and his business valuation license.

108.    On November 1, Carlos filed second amended schedules as Ecf No. 38.  By declaration dated November 4, 2024, Carlos asserted that the second amended schedules were filed to provide more detail regarding the nature and value of the paintings he listed in Schedule A/B.

109.    Carlos has not filed an amended SOFA with the court.

110.    Carlos swore he was a manger of Decision Boundaries, and entity created by his father, and he worked for this entity from 2021 through the present.

111.    Carlos swore that he is a director of a holding company that owns Village Roadshow Entertainment Group, his tax returns reflect an ownership interest in a similarly named entity that has not been disclosed on his bankruptcy petition.

112.    Carlos swore that he is also a director of the operating company of Village Roadshow Entertainment Group.

113.    Carlos swore he is a member of a non-operating non-profit corporation known as the Samawal Foundation.

114.    The debt owed to the Plaintiff arose from the Abadis' misuse and misappropriation of the Plaintiff's funds.

115.    The Abadis provided the Plaintiff with false statements of account and the Plaintiff relied on those statements as accurate and true in continuing to do business with the Abadis.

116.    The Abadis provided the Plaintiff with a false list of assets in 2016.

117.    The Plaintiff justifiably relied upon the accuracy of the list of assets that was used to induce the Plaintiff to enter into an agreement with the Abadi's which the Abadi's then surreptiously used upon information and belief to evade criminal prosecution from FINRA.

118.    The Abadis knew these material misstatements of fact were false when presented to the Plaintiff.

119.    The Plaintiff  suffered significant damages as a result of Abadi's fraud.

120.    As a consequence of the foregoing, the Debtor is liable to Honeedew for damages in the amount of $15,961,554.70 as a result of sums due under the Judgment and by virtue of of orders of contempt issued by the Supreme Court.

121.    As a consequence of the foregoing, the Abadis cannot discharge the the Plaintiff's debts and the Plaintiff is entitled to a judgment in the amount thereof and find these debts are not dischargeable and remain an obligation that the Plaintiff may enforce against the Abadis, regardless of whether the Abadis receive a discharge in their bankruptcy cases.

## FIRST CAUSE OF ACTION AS TO CARLOS AND BARBARA
### [11 U.S.C. § 523(a)(2)(A)]

122.    The Plaintiff repeats and realleges the foreing allegations of this complaint as if fully set forth at length herein.

123.    11 U.S.C. § 523(a)(2)(A) provides in pertinent part that: "A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

124.    The elements of a cause of action for fraud are: (1) a material misrepresentation of fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) damages.

125.    The debt owed to the pon the accuracy of the list of assets that wa used to induce the Plaintiff to enter into the settlement agreement.

126.    The Abadis knew these material misstatements of fact were false when presented to the Plaintiff.

127.    The Plaintiff  suffered significant damages as a result of the Abadi's fraud.

128.    As a consequence of the foregoing, the Debtor is liable to Honeedew for damages in the amount o of no less than $15,961,554.70 as of September 17, 2024, as set forth in the Proof of Claim filed by the Plaintiff.

**WHEREFORE**, as a consequence of the foregoing, the Abadis cannot discharge the Pliantiff's debts and the Plaintiff is entitled to a judgment in the amount thereof and holding

these debts are not dischargeable and remain obligations that the Plaintiff may enforce against the Abadis, regardless of whether the Abadis receive a discharge in their bankruptcy cases.

## SECOND CAUSE OF ACTION AS TO CARLOS AND BARBARA
### [11 U.S.C. § 523(a)(4)]

129.    The Plaintiff repeats and realleges the foreoing allegations of this complaint as if fully set forth at length herein.

130.    11 U.S.C. 523(a)(4) provides in pertinent part that: "A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

131.    As registered and licensed persons in the securities industry and the Plaintiff's agent, the Abadis had a fiduciary relationship with the Plaintiff and owed it a duty of loyalty and were prohibited from acting in any manner inconsistent with their agency or trust and were at all times bound to exercise the utmost good faith and loyalty in connection with the management of the Plaintiff's funds.

132.    By entering into the promissory note and agreement, and by agreeing to the entry of a confession of judgment against them personally, the Abadis acknowledged their personal liability to the Plaintiff.    The Plaintiff suffered significant damages as a direct result of the Abadis'misconduct.

**WHEREFORE**, as a consequence of the foregoing, the Abadis cannot discharge the debts and Plaintiff is entitled to a determination that the debt is not dischargeable and remains an obligation that Plaintiff may enforce against the Abadis, regardless of whether the Abadis receive

a discharge in their bankruptcy cases.

### THIRD CAUSE OF ACTION AS TO CARLOS AND BARBARA
### [11 U.S.C. § 523(a)(6]

133.    The Plaintiff repeats and reallages the foreoing allegations of this complaint as if fully set forth at length herein.

134.    11 U.S.C. 523(a)(6) provides in pertinent part that: "A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

135.    The Abadis willfully and knowingly transferred a portion of the Plaintiff's funds without its knowledge or consent and in violation of their contractual and fidcuiary duties to the Plaintiff.  When the Plaintiff requested the return of its funds, the Abadis refused to return the funds.

136.    The Plaintiff did not obtain a return of a portion of the funds until it was forced to retain legal counsel to compel the return.  The Abadis transferred the Plaintiff's funds for their personal use or an improper purpose that was outside the scope of their duties.  The Abadis knew that their misuse of the Plaintiff's funds would result in significant harm to the Plaintiff and result in damages.

137.    The Abadis conduct willful and malicious and would cause injury to the Plaintiff.

**WHEREFORE**, as a consequence of the foregoing, the Abadis cannot discharge the debt to Plaintiff.  Plaintiff is entitled to a determination that the debt is not dischargeable and remains an obligation that Plaintiff may enforce against the Abadis, regardless of whether the Abadis

receive a discharge in their bankruptcy cases.

## FOURTH CAUSE OF ACTION AS TO CARLOS
### [11 U.S.C. § §727(a)(2)(A)]

138.    The Plaintiff repeats and reallages the foreoing allegations of this complaint as if fully set forth at length herein.

139.    11 U.S.C. §727(a)(2)(A) provides in pertinent part that: "The court shall grant the debtor a discharge, unless— . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed. . . (A) property of the debtor, within one year before the date of the filing of the petition."

140.    Carlos concealed the transfer of his inheritance from his father's estate within one year prior to the bankruptcy filing.

141.    Carlos's act of concealment was done with the intent to defraud creditors and place his inheritance beyond the reach of non-insider creditors.

**WHEREFORE**, as a consequence of the foregoing, Carlos should be denied a discharge bankruptcy pursuant to 11 U.S.C. 727(a)(2)(A).

## FIFTH CAUSE OF ACTION AS TO CARLOS
### [11 U.S.C. § §727(a)(4)(A)]

142.    The Plaintiff repeats and reallages the foreoing allegations of this complaint as if fully set forth at length herein.

143.    11 U.S.C. 727(a)(4)(A) provides, in relevant part, that: "The court shall grant the

debtor a discharge, unless— . . . (4) the debtor knowingly and fraudulently, in or in connection with the case— . . . (A) made a false oath or account."

144.    Carlos made a false oath when he failed to disclose in his Schedules of Assets and Statement of Financial Affairs (collectively, the Schedules") the relinquishment of his inheritance from his father's estate.

145.    Carlos made a false oath when he failed to disclose in his Schedules that he was a director of or manager of business entities and holds an interest in a non-profit corporation. Carlos made a false oath when he failed to disclose in his Schedules all of the income he received in 2022 and 2024.

146.    Carlos made a false oath when he failed to disclose in his Schedules his contingent claim for a $2,000,000.00 commission from the Country of Lebanon until the issue was raised by the Plaintiff.

147.    Carlos made a false oath when he stated in his Schedules that he had no interest in property that is due to him from someone who died.

148.    Upon information and belief, Carlos ceded his inheritance to satisfy a debt to an insider.  Carlos made a false oath when he failed to disclose in his Schedules that he transferred property within one year of the bankruptcy filing on account of a debt that benefitted an insider.

149.    Carlos made a false oath when he stated in his Schedules that he did not transfe any property within the two years preceding the bankruptcy filing.

150.    Carlos made a false oath when he stated in his Schedules that within the four years preceding the bankruptcy filing, Carlos was not self-employed, a member of an LLC, and

an officer or director of a corporation.

151.    Carlos made a false oath when he stated he was a resident of Queens County on the date of his bankruptcy filing.

**WHEREFORE**, Carlos's intentional omission of such material facts constitutes a false oath and account and renders his debt non-dischargeble pursuant to 11 U.S.C. § 727(a)(4)(A).

## SIXTH CAUSE OF ACTION AS TO BARBARA
### [11 U.S.C. § §727(a)(4)(A)]

152.    The Plaintiff repeats and reallages the foreoing allegations of this complaint as if fully set forth at length herein.

153.    11 U.S.C. 727(a)(4)(A) provides, in relevant part, that: "The court shall grant the debtor a discharge, unless— . . . (4) the debtor knowingly and fraudulently, in or in connection with the case— . . . (A) made a false oath or account."

154.    Barbara made a false oath when she failed to disclose in her Schedules of Asset and Statement of Financial Affairs (collectively, the Schedules") she stated in her Schedules that she did not transfer any property within the two years preceding the bankruptcy filing.

155.    Barbara made a false oath when she stated she was a resident of Queens County on the date of his bankruptcy filing.

156.    Barbara's intentional omission of such material facts constitutes a false oath and account and renders her debt non-dischargeble pursuant to 11 U.S.C. § 727(a)(4)(A).

## SEVENTH CAUSE OF ACTION AGAINST BARBARA AND CARLOS
### (11 U.S.C. § 523(a)(19) – SECURITIES RELATED FRAUD)

157.    The Plaintiff repeats and reallages the foreoing allegations of this complaint as if

fully set forth at length herein.

158.    The Abadi's engaged in dealings in securities to Plaintiff being fully aware of significant risks involved in the investment.  Defendant did not disclose these risks, but rather secreted them from Plaintiff.

159.    In addition to violating state and federal securities laws, the Abadi's committed common law fraud, deceit and manipulation in connection with the sale of the securities.

160.    Further, Carlos and Barbara are control persons and therefore were personally responsible in connection with their role at the Company and its subsidiaries.

161.    Barbara has refused to comply with multiple court orders to turn over storage discs and property that may lead the Plaintiff to the recovery of its funds.

162.    Both of the Abadi's committed acts of pejury, false swearing and made transfers for which a bankruptcy discharge should not make them immune.

**WHEREFORE**, the Abadi's obligations owing to Plaintiff for their violations of securities laws and/or common law fraud, deceit and manipulation should not be discharged in their bankrupty cases.

### RESERVATION OF RIGHTS

163.    The Plaintiff 's investigation into the Abadis's assets and financial affairs remains ongoing. The Section 341 Meeting of Creditors was continued and not concluded due to the Abadis's failure to provide the Chapter 7 Trustee with the documents and information requested before the meeting.  The Plaintiff intends to conduct discovery and expressly reserves the right to amend and/or supplement the factual bases and/or the relief requested by this Complaint.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury on all issues so triable

Dated: December 18, 2024

Respectfully submitted,

**MEDINA LAW FIRM LLC**                    **ORTIZ & ORTIZ LLP**
/s/ *Eric S. Medina, Esq.*
Eric S. Medina, Esq.                          */s/ Norma Ortiz       .*
641 Lexington Avenue                         Norma Ortiz, Esq.
Thirteenth Floor                             287 Park Ave. South
New York, NY 10174                           Ste. 337
Telephone: (212) 404-1742                    New York, NY 10010
Facsimile: (888) 833-9534                    Telephone: (718) 522-1117

*Co-Counsel for Plaintiff Honeedew Investing LLC*    *Co-Counsel for Plaintiff Honeedew Investing LLC*