Douglas J. Pick
Eric C. Zabicki
**PICK & ZABICKI LLP**
Counsel to the Debtors
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

BARBARA J. ABADI, *et al.*,

         Debtors.[1]
---------------------------------------------------------x

        Chapter 7 (Jointly Administered)

        Case No. 24-42873 (JMM)

### DEBTORS' MOTION TO REMOVE ERIC HUEBSCHER AS CHAPER 7 TRUSTEE OF THE DEBTORS' RESPECTIVE ESTATES

TO THE HONORABLE JIL MAZER-MARINO,
UNITED STATES BANKRUPTCY JUDGE:

    Barbara J. Abadi ("Barbara") and Carlos A. Abadi ("Carlos") the chapter 7 debtors in the above-captioned jointly administered cases (together, the "Debtors"), by and through their undersigned counsel, as and for their motion (the "Motion") for entry of an Order, pursuant to § 324(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[2,] removing Eric Huebscher as the Chapter 7 Trustee of the Debtors' respective estates "for cause", respectfully represent and allege as follows:

#### PRELIMINARY STATEMENT

    1.   The Trustee was "hand-picked" by Honeedew Investing Limited ("Honeedew"), a judgment creditor of the Debtors who has expressed through its words and deeds that it is the *only*

---

[1] The Debtor's bankruptcy case is being jointly administered with the bankruptcy proceeding of Carlos A. Abadi pending in this Court under Case No. 24-43315 (JMM).

[2] Section 324(a) of the Bankruptcy Code provides: (a) The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause.

creditor of either of the Debtors that matters, to serve as Honeedew's "enforcer".  Since that time, the Trustee, through his words and deeds, and at every available opportunity, has overtly expressed his belief that the Debtors are dishonest crooks who are hiding valuable assets, have intentionally failed to fully and accurately disclose their assets, liabilities and other financial affairs, or are otherwise unworthy of his or the Court's respect, let alone worthy of a chapter 7 discharge.  This is untenable.  The Debtors are entitled to have their estates and their cases administered by an unbiased chapter 7 trustee capable of making rational decisions.[3] based on the facts alone and without the prejudices whispered to him by the one creditor who appointed and elected him.  Mr. Huebscher should be acting for the benefit of all creditors and not one who is essentially representing and doing the bidding of the single creditor who elected him.  Accordingly, the Trustee should be removed by this Court.[4]

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. § 1409.  The statutory predicate for the relief sought herein are § 324(a) of the Bankruptcy Code.

---

[3] As for example only *and after their release from Rikers Island* the Trustee inexplicably, inexcusably and repeatedly refused, notwithstanding multiple written and verbal requests, an innocent and simple request to release the Debtors' clothing from their storage facilities. (Copies of the email requests are attached as *Exhibit "A"*).  The Trustee, at the same time, was not paying any of the storage charges thus leaving the storage debt obligation (approximately $2,100) to the Debtors to pay if they wanted to gain access to their clothes.  To date, the Trustee has refused to pay for those storage charges.

[4] To the extent that the Trustee seeks to defend himself from the bias and prejudice he has demonstrated throughout the case, the Debtors would request to file discovery demands on the Trustee and his counsel relating to all communications

## BACKGROUND

3.      The familiarity of the Court, the Trustee and Honeedew with the relevant facts and circumstances of this case is presumed for purposes of this Motion.  Briefly, on or about November 16, 2016, the Debtors executed a Confession of Judgment in the principal amount of $4,603,408.23 in favor Honeedew securing their obligations to Honeedew under a certain Settlement Agreement. On May 17, 2017, Honeedew entered a "Judgment By Confession" (the "Judgment") in the principal amount of $4,603,408.23 against the Abadis  thereby commencing a civil action entitled *Honeedew Investing Limited v. Carlos Abadi and Barbara Abadi*, Index No. 652654/2017 (the "State Court Action"), with the Supreme Court of the State of New York, County of New York (the "State Supreme Court"), and began collection efforts.

4.      On May 20, 2024, the Honorable Nancy Bannon of the State Supreme Court committed both of the Debtors to the custody of the New York City Department of Corrections for four months, unless they paid the Judgment debt in full which, upon information and belief, totaled approximately $8.4 million at that time. The State Supreme Court predicated the commitment order upon an April 4, 2024 finding of civil contempt which was, in turn, based upon findings made by the Court that six or seven years earlier, in 2017 and 2018, the Debtors had impeded Honeedew's efforts to collect on the Judgment[5.]  The Debtors were immediately committed and were thereafter incarcerated at the Rikers Island prison complex in Queens, New York.

---

with Honeedew and its counsel.

[5]Honeedew has acknowledged in its Amended Complaint Objecting to the Discharge of the Debtor to having (incredibly) *expended close to $2,000,000.00 in legal fees and court costs* (See para 57 to the Amended Complaint) over the past seven to eight years during which period Honeedew has relentlessly pursued the Debtors (very much like Captain Ahab's relentless  pursuit of Moby Dick) to unsuccessfully locate imagined undisclosed assets.  It is submitted that since his election and via a *quid pro quo* in exchange for Honeedew's unexplained decision to replace a qualified Chapter 7 Panel Trustee (Mr. Doyoga) for Mr. Huebscher, who is not on the panel, Mr. Huebscher has locked forces with Honeedew to continue Honeedew's Captain Ahab's syndrome not realizing that his apathetic attitude toward the Debtors and his clearly expressed bias and prejudice toward the Debtors could only drag him down much the same as Captain Ahab was ultimately dragged down to the depths of the sea.

5.      On July 11, 2024, and while still incarcerated at Rikers Island, Barbara filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with this Court.  On August 9, 2024, and also while still incarcerated at Rikers Island, Carlos filed his own voluntary petition for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.

6.      David J. Doyoga was appointed as the interim Chapter 7 Trustee in each of the Debtors' cases.  At the Debtors' respective § 341 meetings convened on September 16, 2024, the Trustee was nominated and elected by Honeedew to serve as trustee in each of the Debtors' cases.  No explanation was ever provided as to why Mr. Doyoga could not have functioned as Chapter Trustee.  Simply said, Honeedew wanted to hand pick its own Trustee after having discussed the proceedings with Mr. Huebscher and prior to nominating him as the permanent Trustee

7.      Honeedew has filed substantially identical proofs of claim in each of the Debtors' cases in the (clearly overstated) amount of $15,961,554.70 (both labeled by the Clerk of the court as Claim No. 1) representing the amounts purportedly owed under the Judgment which is the subject of the State Court Action.  No other claims have been filed by any creditor of the Debtors.

8.      On October 14, 2024, less than a month after having been nominated and elected by Honeedew to act as Chapter 7 Trustee, and prior to the scheduled 341 examinations of the Debtors, the Trustee had sent a letter to counsel to the Debtors demanding the production of documents (*to be made in two weeks,* "*by no later than November 1, 2024*"), a copy of which is attached *Exhibit "B"*.  As the court will note, the Trustee's letter document demand ran five pages, single space.  Counsel immediately, the same day, responded to the inappropriateness of many of the demands (See *Exhibit "B"*)"but mindful of this Court's direction to work cooperatively with the  Chapter 7 began efforts to comply with the Trustee's document demands.

9.      On November 1, 2024, and in addition to a letter addressing each and every specific request, a copy of which is attached hereto as *Exhibit "C"*, the Debtors produced 4,374 Bates numbered pages of documents to the Trustee in response to his letter document demand.  The documents were produced in folders referring to each specific request set forth in the Trustee's letter demand so as to avoid any confusion and simplify the Trustee review. The extensive documents produced by the Debtors included, among other documents, all requested bank statements, credit card statements, tax documents, real and personal property documents, insurance documents, gift documents and other books and records requested by the Trustee.  The Debtors also provided specific information that the Trustee had requested, including their personal e-mail addresses, cell phone numbers, and the like.  Tellingly, as of the date hereof, the Trustee has not raised any objection regarding the Debtors' compliance with his letter demand.  The Debtors had also produced additional documents in response to several additional requests that were made by the Trustee.  In addition to the production from the Debtors, it should be noted that Honeedew had also provided Mr. Huebscher with copies of documents that were produced by the Debtors to Honeedew  over the past seven to eight years (including personal financial statements completed and provided by the Abadis to Honeedew, a copy of their passports, etc.).

10.      Eighteen days later, on November 19, 2024, the Debtors appeared for their examinations pursuant to 11 U.S.C. § 341(a).   Barbara Abadi flew up for Florida and Carlos Abadi took a train from Georgia.  The Debtors had previously requested to be examined together, as husband and wife.  The Trustee simply refused, reflecting a predisposition not to trust, believe in or have confidence in the Debtors to tell the truth, excusing his behavior by stating "*his right*" to treat the Debtors separately and to isolate one of them (in another room) while the other was being examined.  Essentially, the Trustee was not looking for the Debtors to address their assets, liabilities

5

and financial affairs but was hoping to ambush the Debtors which did not materialize.  The Trustee completed his examination of the Debtors within hours advising that he was not closing the examinations but wanted the Debtors, again at their expense, to return another day for their continued examinations.  Copies of the 341 Transcripts are attached as *Exhibits "D" and "E"*, respectively.  As the Court will note, Mr. Huebscher was more interested in the Confession of Judgment signed by the Abadis than asking about the Debtors' assets and liabilities.

11.    Two weeks later and on December 3, 2024, and notwithstanding the Debtors having (i) produced over 4,374 Bates-numbered pages of documents to Mr. Huebscher, (ii) having voluntarily appeared at their 341 meeting, (iii) having answered each and every question posed by the Chapter 7 Trustee, his counsel[6] and Honeedew,  (iv) having turned over the keys to all storage units, (v) having turned over the keys to the Buenos ,Aires apartment, (vi) having followed the clear directions from this Court to act cooperatively and to assist the Trustee in his administration of the Estate, and (vii) notwithstanding the production of documents from Honeedew (including a copy of the Debtors' passports) , the Trustee filed a Motion for an Order Extending his Time to Object to the Debtors' Claimed Exemption and/or to File a Complaint Objecting to the Debtors' Discharge. (ECF No. 109).   In support of that Motion the Trustee stated that *he was still currently in the process of analyzing the Debtors' financial affairs,* including the Debtor's schedules of assets and liabilities and statement of financial affairs, along with the Debtors' testimony from their recent meeting of creditors pursuant to 11 U.S.C. § 341(a).

12.    Shockingly, and without explanation and notwithstanding having advised this Court that the Trustee was still investigating and analyzing the vast amount of information provided by the

---

[6] As reflected in the transcript of the 341 meeting, counsel to the Debtors raised an objection to the Trustee and his counsel each taking turns to examine the Debtors.

Debtors (and Honeedew) including a review of the Debtors' 341 examinations, the Trustee then surprisingly reveals his predisposed thinking as follows:

> The Debtors are on record of having a pattern of concealing or obstructing access to their assets and those assets they have disclosed are located in various places around the country and the world, making the Trustee's due diligence of the Debtors' assets more time consuming to assess.[7]

13.    Approximately one month thereafter, the Trustee filed a Complaint seeking a Judgment, pursuant to 11 U.S.C. § 727, denying the Debtors' their discharge (Case No. 01004/2025), notwithstanding being fully aware that the Debtors' only real creditor, Honeedew, had already filed its own Non-Discharge Complaint (Case No. 24-01111). In furtherance thereof and without any factual supporting context and notwithstanding the Debtors' protestations that they have always told the truth and have disclosed everything and notwithstanding that the trustee has made it clear that he has only started his investigation, Mr. Huebscher again uncompromisingly and unabashedly spills to this Court his disinterestedness and his predisposed prejudice and bias against both of the Debtors, alleging as follows:

> The Debtors have a years' long record of having lied to their creditors and even a court of law. Even at this early stage of the Trustee's investigation of these Debtors, who have assets and business dealings all over the world, it is clear the Debtors sought to use the bankruptcy process to not only free them from their incarceration for civil contempt, but also to continue to shield the extent of their assets and business dealings from the Trustee, their creditors, and this Court. The discharge of debtors afforded by the bankruptcy process is not intended to reward Debtors who behave in this manner.
>
> Among other things, after several amendments to their bankruptcy schedules, statements of financial affairs and even to their respective

---

[7] The Debtors are unaware of any concealed assets and has been fully cooperative with the Trustee in his investigation of the estates. The Trustee's unsupported statement (not based upon information and belief) simply confirms a clear and convincing expressed bias and prejudice against the Debtors in favor of Honeedew alone. The Debtors have repeatedly stated that they would have completely sacrificed everything that they have to Honeedew so as to avoid a stay at Rikers Island (a place recognized for a home for cockroaches, sickly putrid non flushable toilets, iron beds belted to the floors, thin (almost nonexistent) mattresses, gang members, rampant drugs, over 6,000 inmates, aggressive correction officers, etc.etc etc.. Honeedew turned a deaf ear to the Debtors as has the Trustee

bankruptcy petitions, the Debtors failed to disclose their interests in several businesses, certain income which was purportedly received but is not reflected in the Debtors' bank statements, the right to receive interests in certain inheritances and to satisfactorily explain how they spent millions of dollars around the world while they chose to not to satisfy their obligations to certain of their creditors[8]. The Debtors also failed to produce bank accounts showing payments of certain living expenses and obligations, yet there is evidence that these expenses have continued to be paid. Although the Trustee is still actively investigating the Debtors and their financial affairs leading up to their incarceration, and reserves his right to amend this Complaint, at present, and without further disclosure and additional information, the Debtors should be denied the discharge of their debts.

14. A close review of the Complaint itself reflects a section entitled *"Facts Common to All Causes of Action,"* which strangely centers entirely around the failed business relationship between Abadi & Co. and Honeedew, as opposed to concentrating on and addressing 11 U.S.C. § 727 and leaving the failed business relationship to Honeedew in its previously filed action. As for example only, the Trustee alleges without any supporting factual basis for such allegations and, most notably, not "upon information and belief"):

> 9. Prior to 2016, the Debtors were the owners and operators of Abadi & Co., Abadi & Co. Securities Ltd., ACGM, Inc., Abadi & Co. Global Markets and other business entities (collectively, the "Abadi & Co. Entities") which provided financial advisory and brokerage services to its clients, including Honeedew Investing LLC ("Honeedew").
>
> 10. Upon information and belief, in or around 2016, the Debtors, by and through these entities failed and/or refused to honor Honeedew's withdrawal requests exceeding $14.6 million.
>
> 11. To resolve their disputes regarding the disputed monies, on or around November, 2016, the Debtors and Honeedew entered into a settlement agreement which included a confession of judgment signed by Carlos, dated November 9, 2016, and a confession of judgment signed by Barbara, dated November 14, 2016 upon which Honeedew could execute if the Debtors defaulted on their obligations under the settlement agreement.

---

[8] Actually, referring to Honeedew alone.

\*\*\*

13. By Spring 2017, the Debtors defaulted on their obligations under the settlement and Honeedew enforced its rights under the settlement agreement to enter the judgment confessed by the Supreme Court of the State of New York, New York County ("NY State Court"), captioned Honeedew Investing Limited v. Carlos Abadi and Barbara Abadi (Index No. 652654/2017) (the "NY Enforcement Proceeding").

14. On May 17, 2017, the New York Court entered the Confession of Judgment in the amount of $4,655,622.23 (the "Honeedew Judgment"). The Honeedew Judgment continued to accrue interest and fees since the date it was entered.

\*\*\*

20. From the date of the Honeedew Judgment through the dates on which the Debtors respectively filed their bankruptcy petitions (the "Review Period"), the Debtors spent more than $2.3 million alone in the account statements the Debtors produced to the Trustee to date.

\*\*\*

32. All the while, in the NY Enforcement Proceeding, the Debtors made false representations to the NY State Court that Carlos did not own any property in Argentina, among other lies identified by Justice Bannon.

33. In a related proceeding pending in Argentina, the Debtors made false representations that the Honeedew Judgment was invalid and should not be enforced against Carlos's Buenos Aires apartment.

34. During the years of the NY Enforcement Proceeding, while the Debtors made false representations to various courts and refused to pay Honeedew despite their means, the value of Carlos's Buenos Aires apartment decreased.

35. Ultimately, the Debtors numerous and repeated lies, misrepresentations and obfuscation of their assets, to their creditors, the NY State Court and the Argentinian Court resulted in the NY State Court entering an Order of Commitment of both Debtors to Rikers Island Jail Complex ("Rikers Island") in May 2024.

36. In connection with the Commitment Order, the NY State Court confiscated and is currently still holding each of the Debtors' passports.

37. The Debtors remained incarcerated at Rikers Island until they each filed their respective bankruptcy cases permitting Carlos and then Barbara to be released from prison.

9

## DISCUSSION

15.     Section 324(a) of the Bankruptcy Code provides:

> (a) The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause.

New York District Court Judge Katherine Polk Failla issued an Opinion and Order in the matter of *Maiman v. Spizz (In re Ampal-American Isr. Corp.)*, 554 B.R. 604 (S.D.N.Y. 2016), which addressed the requirements to remove a trustee from administering a Chapter 7 case, including that the removal of the Chapter 7 trustee would be warranted where, as here, the bankruptcy proceedings would suffer more from the discord created by a rogue, biased and prejudiced trustee than would be suffered if a new Chapter 7 Trustee were immediately appointed.  It is submitted that the above stated facts clearly support that the Debtors are not being impartially treated by Mr. Huebscher as honest but unfortunate Debtors who were forced to file for bankruptcy relief so as to be released from the notorious torture chamber otherwise known as Rikers Island, but are being treated by Mr. Huebscher as criminals who would rather spend their lives in Rikers Island than to turn over their assets to Honeedew.   Contrary to Mr. Huebscher's perception, this is not a Steven Spielberg movie presenting dramatic scenarios with obvious villains and heroes, but real life, where a family's life and finances have been on full display and has been since 2017 and where the attacks have persisted non -stop for seven to eight years and continues to date.    It is troubling that the Debtors are again being placed in the position, to their clear disadvantage, of trying to prove their innocence to the handpicked Trustee of Honeedew, as Honeedew successfully pursues its agenda to exercise full control over the Chapter 7 Trustee's thinking, his perceptions and his actions.   Mr. Huebscher has clearly discarded impartiality and has become a rogue Trustee acting solely in favor of his constituent, Honeedew.   With respect to the requested replacement of the Chapter 7 Trustee, Judge Katherine Polk Failla has held:

10

> Pursuant to 11 U.S.C. § 324(a), a bankruptcy court may remove a trustee for cause, which generally requires a showing of "fraud and actual injury to the debtor interests." *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965); *accord Haworth*, 356 F. App'x at 530. "The party seeking to remove a trustee must make a 'strong showing because the effect of removal is deleterious to the continuity of the administration of the estate.'" *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 317 (Bankr. S.D.N.Y. 2016) (*citing Matter of Carla Leather, Inc.*, 44 B.R. 457, 473 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985)). "Removal should be exercised only 'if the administration of the estate in bankruptcy would suffer more from the discord created by the present trustee than would be suffered from a change in administration.'" *In re Concept Packaging Corp.*, 7 B.R. 607, 609 (Bankr. S.D.N.Y. 1980) (*quoting Freeport Italian Bakery, Inc.*, 340 F.2d at 55). (Footnote omitted).(*Id* at *623-624)

16.    The above is entirely consistent with former Chief Judge Tina Brozman holding, who in *In re Vebeliunas*, 231 B.R. 181 (Bankr. SDNY,1999) acknowledged that disinterestedness is applicable  throughout the Chapter 7 case (from beginning to end) requiring all fiduciaries to continually maintain independence of judgment that is not compromised by bias, not compromised by an appearance of a conflict irrespective of the integrity of the person under consideration ("the most modest interest of relationship will undo a person's disinterestedness if it would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules")(*id* at *191), of the "destructive force bias can be if it is allowed to go unchecked . . . .:" (*id.* at *185) and the bankruptcy court's fundamental responsibility to monitor the integrity of the proceeding before it (*citing to In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987)(*id* at *187).  Former Chief Judge Brozman held as follows:

> WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines prejudice as "a preconceived judgment or opinion" and "an opinion or leaning adverse to anything without just grounds or before sufficient knowledge." *WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Merriam-Webster, Springfield Mass. 1981).* the same source defines bias as "such prepossession with some object or point of view that the mind does not respond impartially to anything related

11

to this object or point of view." *Id.* While Vebeliunas may turn out to be guilty, as alleged, of supplying misinformation to the parties in interest, Graham simply cannot have concluded that Vebeliunas is lying absent a bias or prejudice on Graham's part because there has not been an examination of Vebeliunas, and, therefore, the totality of evidence needed for Graham to have formed a reasoned judgment is not yet available. Quite obviously Graham is biased against the debtor, for when Ms. Setikas merely requested information for Vebeliunas, Graham responded by attacking the debtor's credibility, thereby demonstrating a complete lack of impartiality with respect to anything having to do with him.

Warshaw Burstein and Graham contend that the comments to Ms. Setikas about the debtor were perhaps "impolitic" but not serious enough to raise a question as to counsel's disinterestedness. An impolitic remark is an unwise remark. *See id.* During his conversation with Ms. Setikas, had Graham quipped "Vebeliunas probably threw out the notice I sent him," that would have been an unwise and inappropriate remark, but not one indicating bias or prejudice. However, telling a debtor's representative that you don't believe a word the debtor says <u>before you have spoken with the debtor</u> is significantly more troubling. It indicates a predisposition not to trust, listen to, believe in or have confidence in that person.

***

B. Standards of Disinterestedness

Courts examine the goals and purposes of the disinterestedness requirement in order to understand the full contours of that concept. To be disinterested is "to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration." *In re Codesco*, 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982) (*quoted in Martin*, 817 F.2d at 181; *Hot Tin Roof*, 205 B.R. at 1003; *In re Kendavis Industries International, Inc.*, 91 B.R. 742, 754 (Bankr. N.D. Tex. 1988)). Further, a disinterested person "should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters." *Codesco*, 18 B.R. at 999 (*quoted in Martin*, 817 F.2d at 181; *Hot Tin Roof*, 205 B.R. at 1003; *Kendavis*, 91 B.R. at 754). The most modest interest or relationship will undo a person's disinterestedness if it "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *Roberts*, 46 B.R. at 828 n. 26 (*quoting Philadelphia Athletic Club*, 20 B.R. at 334 (*quoting* COLLIER BANKRUPTCY MANUAL, § 101.13)); *Granite*, 219 B.R. at 33; COLLIER at 327-30 (*citing and cited in Envirodyne*, 150 B.R. at 1017) ("Professional persons employed by the trustee should be free of any conflicting interest which might in the view of the trustee or the

12

bankruptcy court affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case."). From this we see that what is behind prohibiting the existence of a conflict of interest or relationship is the desire to ensure the independence and impartiality of the professional to be retained.

Any determination regarding Graham's disinterestedness would not be complete without also taking into account the fiduciary duties he has as counsel to the chapter 7 trustee. A trustee in bankruptcy, *see King v. United States*, 379 U.S. 329, 337, 13 L. Ed. 2d 315, 85 S. Ct. 427 (1964); *In re Lehal Realty Associates*, 101 F.3d 272, 276 (2d Cir. 1996) (a bankruptcy trustee is an officer of the court that appoints him or her); Marvel, 140 F.3d at 474, as well as his or her counsel, are officers of the court. *See Securities and Investor Protection Corporation v. Charisma Securities Corporation*, 506 F.2d 1191, 1193-1194 (2d Cir. 1974); *Grant v. George Schumann Battery and Tire Company*, 908 F.2d 874, 884 (11th Cir. 1990); *Continental Illinois National Bank & Trust v. Charles N. Wooten, Ltd. (In re Evangeline Refining Company)*, 890 F.2d 1312, 1323 (5th Cir. 1989). "Where persons perform duties in the administration of the bankruptcy estate, they act 'as officers of the court' and not private persons." *Evangeline Refining*, 890 F.2d at 1323. "As such, trustees and attorneys for trustees are held to high fiduciary standards of conduct." *Id.*; *Marvel*, 140 F.3d at 474; *Philadelphia Athletic Club*, 20 B.R. at 333 ("the attorney for the trustee had to exercise the same degree of disinterestedness as the trustee himself"); *Codesco*, 18 B.R. at 999 ("trustee's selection of counsel, however, must be consistent with high standards required of the officers of the federal courts"). These fiduciary duties are owed not only to the entire creditor body but to the debtor as well. *See Germain v. The Connecticut National Bank*, 988 F.2d 1323, 1330 n.8 (2d Cir. 1993). So the trustee's disinterested counsel must treat with the debtor in accordance with the high standards of conduct expected from fiduciaries in bankruptcy. (Footnote omitted).

17.    Also see: In *In re CNC Payroll, Inc.*, 491 B.R. 454, 2013 Bankr. LEXIS 1771, 57

Bankr. Ct. Dec. :260, 2013 WL 1844109 (Bkrtcy. S.D. Tex. 2013), wherein the court held as follow:

The Bankruptcy Code is silent on the standard of proof required to remove a trustee. *In re Tres-Ark, Inc.*, 483 B.R. 460, 467 (Bankr. W.D. Tex. 2012). At least one court has held that due to the seriousness of removing a trustee, the standard should be clear and convincing evidence. *In re Walker*, 2004 Bankr. LEXIS 2187, 2004 WL 3152787, at *1 (S.D. Fla. Dec. 1, 2004). However, when the

13

Code is silent on the burden of proof, the Supreme Court states preponderance of the evidence is presumed unless particularly important individual interests or rights are at stake. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). *Grogan's* evidentiary presumption is limited to "civil actions between private litigants." *Id.* In contrast, the issue here involves fundamental issues pertaining to the administration of hundreds of bankruptcy cases. The Court must assure both the integrity of chapter 7 trustees, and their ability to operate independently.

Removal of a trustee is an extreme remedy. *See United States Trustee v. Repp (In re Sheehan)*, 185 B.R. 819, 822 (Bankr. D. Ariz. 1995); *see also Ritchie Special Credit Investments, Ltd., et al. v. U.S. Trustee, et al.*, 415 B.R. 391, 399 (D. Minn. 2009). The seriousness of removal is emphasized by the fact that some courts will only remove a trustee upon a showing of fraud or actual injury to the estate. *See In re Bennett*, 2007 Bankr. LEXIS 2970, 2007 WL 2480524, at \*9 (Bankr. N.D.N.Y. Aug. 28, 2007) (citing *Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965)); *see also In re Lundborg*, 110 B.R. 106. 108 (Bankr. D. Conn. 1990). *Id* at 460.

18.    Also see: In *In re Nashville Senior Living*, 2009 Bankr. LEXIS 4430, 2009 WL 981838 (Bkrtcy. M.D. Tenn. 2009) (*quoting In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 460 (Bankr. N.D. Ohio 2003), the court stated:

The court in *Greystone* goes on to explain the DUAL requirements of "disinterestedness" (incorporated by 11 U.S.C. §328) and "adverse interest":

"Disinterested person" is defined in the Bankruptcy Code as one who "does not    have an interest materially adverse to the interest of the estate or of any class of    creditors … by reason of any direct or indirect relationship to, connection with, or  interest in, the debtor … or for any other reason." 11 U.S.C. §101(14)(C) (emphasis added).  The latter portion of the definition, which is referred to as the "catch-all clause," is sufficiently broad to include any professional with an  "interest or relationship that would even faintly color the independence and impartial attitude required by the Code."(citations omitted)  "The definition of disinterestedness in  the Code covers not only actual impropriety, but the appearance of impropriety as  well."(citation omitted)

"Adverse interest" is not defined in the Bankruptcy Code, but the oft-cited definition of adverse interest is:

14

> (1) to possess… an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant: or (2) to possess a predisposition under circumstances that render such a bias against the estate."

(citations omitted).

## CONCLUSION

19.     Based upon the foregoing, the Debtors respectfully submits that this Court should enter an Order removing Eric Huebscher as the Chapter 7 Trustee of the Debtors and for such other and further relief as may be just and proper.

Dated:  New York, New York
        January 20, 2025

> **PICK & ZABICKI LLP**
> Counsel to the Debtors
>
>
> By:     *s/Douglas J. Pick* _____
>         Douglas J. Pick, Esq.
>         369 Lexington Avenue, 12th Floor
>         New York, New York 10017
>         (212) 695-6000