UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

Barbara J. Abadi,

                                     Debtor.

------------------------------------------------------------X

Chapter 7

Case No.: 24-42873-jmm

**MEMORANDUM DECISION SUSTAINING THE CHAPTER 7 TRUSTEE'S OBJECTIONS TO HONEEDEW INVESTING LLC'S PROOFS OF CLAIM AND ORDER RECLASSIFYING, REDUCING AND ALLOWING PROOFS OF CLAIM**

| | | |
|---|---|---|
| Eric S. Medina | Norma E Ortiz | Kathleen Aiello |
| MEDINA LAW FIRM LLC | ORTIZ & ORTIZ, LLP | Kevin Collins |
| 641 Lexington Avenue | 287 Park Avenue South | KLESTADT WINTERS JURELLER |
| Thirteenth Floor | Suite 337 | SOUTHARD & STEVENS, LLP |
| New York, NY 10022 | New York, NY 10010 | 200 West 41st Street |
| *Counsel for Honeedew Investing* | *Co-Counsel for Honeedew* | 17th Floor |
| *LLC* | *Investing LLC* | New York, New York 10036-7203 |
| | | *Counsel for Eric Huebscher,* |
| | | *Chapter 7 Trustee* |

**INTRODUCTION**

Honeedew Investing LLC ("Honeedew") has been attempting to collect a multi-million dollar judgment against Barbara J. Abadi ("Barbara") and Carlos A. Abadi ("Carlos" and together with Barbara, the "Debtors"), since 2017.  Part of those efforts included commencing actions in Argentina to obtain recognition of Honeedew's New York state court judgement and Argentina's equivalent of a judgment lien on the Debtors' Argentinian condominium.  In 2024, the New York state court held the Debtors in civil contempt and directed the Debtors be imprisoned until they paid the amounts owed to Honeedew.  The Debtors filed these chapter 7 cases to obtain the protection of the automatic stay and release from prison.

Honeedew has been active in these chapter 7 cases.  Among other things, Honeedew filed proofs of claim in the Debtors' bankruptcy cases asserting general unsecured claims in excess of $15 million and elected Eric Huebscher (the "Trustee"), as the chapter 7 trustee for the Debtors' bankruptcy estates.

The Trustee marketed the Debtors' condominium and accepted a $900,000 offer.  Honeedew then filed amended proofs of claim asserting that its claims are partially secured by liens on the condominium and objected to the Trustee's proposed sale.

The Trustee objected to Honeedew's amended proofs of claim seeking to reduce the proofs of claim from over $15 million to approximately $7.5 million and to reclassify the claims from partially secured to unsecured.  The Trustee argues the claims are unsecured because Honeedew failed to obtain security interests in the condominium under Argentine law or to assert its secured claims in timely filed proofs of claim.  Further, the Trustee argues that Honeedew should be equitably estopped from asserting security interests in the condominium because the Trustee reasonably relied on Honeedew's representations in its proofs of claim that its claims were

2

unsecured and the estates would be prejudiced if Honeedew were permitted to assert secured claims now.  Lastly, the Trustee argues that Honeedew has overstated the amount of its claims.

Honeedew argues its interests in the condominium are valid and enforceable, the amount of its claims are supported by judgments entered against the Debtors, and its secured claims are timely because they were asserted in proofs of claim that amend timely filed proofs of claim.

For the reasons set forth below, the Court finds that, to the extent Honeedew's claims are secured by interests in the Debtors' condominium, Honeedew waived those security interests by its actions in the Debtors' bankruptcy cases.  Those actions include amending the proof of claim filed in Barbara's bankruptcy case to disavow its secured claim, filing an unsecured claim in Carlos' bankruptcy case, electing the Trustee as the permanent trustee in both cases, and waiting more than one year to amend its proofs of claim to assert secured claims.  Further, the Court finds the state court judgments upon which Honeedew relies to establish the amount of its claims entitle Honeedew to assert claims against each Debtor for $7,547,508.70, not $15,961,554.70.  Therefore, the Trustee's claim objection is sustained and Honeedew's proofs of claims are reclassified, reduced, and allowed as general unsecured claims of $7,547,508.70.

**JURISDICTION**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(b)(2), and the Eastern District of New York Standing Order of Reference, dated August 28, 1986, as amended by the Order, dated December 5, 2012.  The Court may hear and determine this contested matter because it is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**PROCEDURAL BACKGROUND**

On February 9, 2026, the Trustee objected to proofs of claim filed by Honeedew seeking to reduce and reclassify those claims as general unsecured claims. Ch. 7 Tr.'s Object., Seeking Entry of Order, Pursuant to 11 U.S.C. §§ 105, 502, 506, and Fed. R. Bankr. P. 2007, Reclass. and Reduc. Proofs of Claim Filed by Honeedew Against Debtors' Estates, ECF No. 276 ("Trustee's Objection").

On March 3, 2026, Honeedew responded to the Trustee's Objection. Cr. Honeedew's Resp. Opp'n to Ch. 7 Tr.'s Obj. to Claims 1-2 and 1-3, ECF No. 286 ("Honeedew's Response"). On March 6, 2026, the Trustee replied. Ch. 7 Tr.'s Reply Further Supp. Obj. to Claims Filed by Honeedew, ECF No. 288 (the "Trustee's Reply").

The Court heard argument on the Trustee's Objection, Honeedew's Response, and the Trustee's Reply on March 10, 2026. The Court determined that Honeedew's claims should be reclassified from secured to unsecured claims and reserved decision respecting the allowed amount of the claims. March 10, 2026 Hr'g Tr. at 67:9–25, ECF No. 319. At a hearing held on April 7, 2026, the Court informed the parties it would memorialize its determinations in a memoranda. April 7, 2026 Hr'g Tr. at 37: 11–15, ECF No. 323.

**BACKGROUND**

Debtors' Bankruptcy Cases and Election of the Chapter 7 Trustee

On July 11, 2024, Barbara filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). Volun. Pet. Individs. Filing Bankr., ECF No. 1. David J. Doyaga was appointed the interim chapter 7 trustee for Barbara's bankruptcy estate and a first meeting of creditors was scheduled for August 8, 2024. Notice Ch. 7 Bankr. Case, Meet. of Crs. & Notice Appoint. Interim Tr., ECF No. 3.

4

On August 8, 2024, Honeedew filed a proof of claim, identified on the claims register of Barbara's bankruptcy case as Claim No. 1-1, asserting a $15,961,554.70 partially secured claim. Barbara Abadi Claims Register, Claim No. 1-1.  Honeedew asserted its claim was partially secured by Barbara's interest in an apartment located at Calee Parera 37:47, Buenos Aires Argentina (the "Property").  *Id.*

On August 9, 2024, Carlos filed a voluntary petition for relief filed under chapter 7 of the Bankruptcy Code, which is pending in this Court under Case No. 24-43315-jmm.  Volun. Pet. Individs. Filing Bankr., Carlos ECF No. 1.[1]  David J. Doyaga was appointed interim chapter 7 trustee for Carlos' bankruptcy estate and a first meeting of creditors under Bankruptcy Code Section 341 was scheduled for September 19, 2024.  Notice Ch. 7 Bankr. Case, Meet. of Crs. & Notice Appoint. of Interim Tr., Carlos ECF No. 4.  Due to the commencement of Carlos' bankruptcy case, the interim chapter 7 trustee adjourned the 341 meeting of creditors in Barbara's case.  Notice Adj. Sec. 341 Meet. and Tr. Elect., ECF No. 41.

On August 21, 2024, Honeedew amended the proof of claim it filed in Barbara's bankruptcy case that reclassified its $15,961,554.70 claim from partially secured to unsecured. *See* Barbara Abadi Claim Register, Claim No. 1-2.  On September 18, 2024, Honeedew filed a proof of claim, identified on the claims register for Carlos' bankruptcy case as Claim No 1-1, asserting a $15,961,554.70 unsecured claim.  *See* Carlos Abadi Claim Register, Claim No. 1-1. Honeedew's proof of claim against Carlos is identical to Honeedew's amended proof of claim against Barbara.

Prior to the 341 meeting of creditors in each of the Debtor's bankruptcy cases, Honeedew notified the Office of the United States Trustee that it would seek elections for chapter 7 trustees

---

[1]  Citations to "Carlos ECF No. ___" are references to documents filed on docket of *In re Carlos A. Abadi*, Case No. 24-43315-jmm.

pursuant to Bankruptcy Code section 702 and Bankruptcy Rule 2003(b)(3).  *See* U.S. Tr.'s R. Certify. Elect. Ch. 7 Tr., ECF No. 78.  Honeedew elected Eric Huebscher as permanent chapter 7 trustee for Barbara's bankruptcy estate at a 341 meeting of creditors held on September 16, 2024.  *Id.*  Honeedew elected Mr. Huebscher as permanent chapter 7 trustee for Carlos' bankruptcy estate at a 341 meeting of creditors held on September 19, 2024.  *See* U.S. Tr.'s R. Certify. Elect. Ch. 7 Tr., Carlos ECF No. 21.  Honeedew was the sole voting creditor in both elections.  *See* U.S. Tr.'s R. Certify. Elect. Ch. 7 Tr., ECF No. 78; U.S. Tr.'s R. Certify. Elect. Ch. 7 Tr., Carlos ECF No. 21. On October 11, 2024, the Office of the United States Trustee filed a Notice of Appointment of Successor Trustee Eric Huebscher in each bankruptcy case.  Notice Appoint. of Tr., ECF No. 88; Notice Appoint. of Tr., Carlos ECF No. 29.

On November 1, 2024, the Court entered an order directing the Joint Administration of the Debtors' chapter 7 cases.  Order Purs. Rule 1015(b) Fed. R. Bankr. P. Direct. Joint Admin. Ch. 7 Cases., ECF No. 98; Order Purs. Rule 1015(b) Fed. R. Bankr. P. Direct. Joint Admin. Ch. 7 Cases, Carlos ECF No. 36.  The deadline for filing claims in the jointly administered cases was August 8, 2025 (the "Bar Date").  Notice Discov. of Assets, ECF No. 209.

On December 24, 2025, Honeedew again amended the proofs of claim it filed in the Debtors' cases.  Barbara Abadi Claims Register, Claim No. 1-3; Carlos Abadi Claims Register, Claim No. 1-2 (together, the "Secured Proofs of Claim").  Each Secured Proof of Claim asserts a claim in the amount of $15,961,554.70 that is secured by a lien on the Property.  *Id.*  Each Secured Proof of Claim asserts the Property's fair market value is $2,500,000.  *Id.*

Honeedew's claims are based on:  (a) a $4,603,408.23 New York state court Judgment by Confession by the Debtors in favor of Honeedew, entered May 9, 2017 (the "Initial Judgment"); (b) a $23,016.61, 2023 New York state court  money judgment for the Debtors' civil contempt (the

6

"First Contempt Judgment"); and (c) a Decision and Order entered on April 5, 2024 (the "Second Contempt Judgment") that also held the Debtors in contempt of a New York State court order. Copies of the Initial Judgment and the First Contempt Judgement are attached to each Secured Proof of Claim. Also attached is a chart that calculates interest on the Initial Judgment and accounts for payments made to reduce the indebtedness. That chart represents that Barabara and Carlos are jointly and severally liable to Honeedew for $7,524,492.09, as of July 11, 2024. Honeedew did not attach the Second Contempt Judgment to its proofs of claim but filed a copy on the Docket. *See* Aff. Supp. Opp'n and Supp. Misc. Relief, ECF. No. 17- 16. Honeedew asserts its security interest in the Property derives from an Argentine exequatur proceeding. *Id.*

The Exequatur Proceeding

In August 2017, Honeedew commenced an exequatur proceeding in Argentina, seeking recognition of the Initial Judgment. Honeedew's Response at 11. The Argentine court issued an order imposing a judicial attachment against the Property (the "Attachment Order"). *Id.* at Ex. A. Honeedew claims the Attachment Order was recorded in the Real Property Registry of the City of Buenos Aires. *Id.* at 11. In July 2022, Honeedew commenced a second exequatur proceeding (the "Exequatur Proceeding") in which the Argentine court re-ordered the registration of the Attachment Order to preserve the legal effect and priority of the 2017 Attachment Order. *Id.* Honeedew claims it paid a mandatory "justice tax" to pursue enforcement of the order against the Property and the justice tax coupled with the Attachment Order create "a secured enforcement interest" in the Property. *Id.*

On August 15, 2024, Honeedew filed an emergency motion in these cases for, among other things, relief from the automatic stay to continue the Exequatur Proceedings. Mot. for Relief from Stay, Carlos ECF No. 8 ("Honeedew's MFRS"). Carlos objected to Honeedew's MFRS but the

7

Trustee did not.  Debtor's Opp'n to Honeedew's Emergency Mot., Carlos ECF No. 19.  The hearing on Honeedew's MFRS was adjourned from time to time.  Although Honeedew informed the Court it intended to withdraw the motion, Honeedew changed course and requested the Court to enter an order denying Honeedew's MFRS instead.  March 6, 2025 H'rg Tr. 5:3–9, 20–23, ECF 191; Order Den. Honeedew's Emergency Mot. to (I) Joint. Admin. Related Bankr. Cases; (II) Modify Auto. Stay; (III) Advance Sec. 341(a) Hear. Coinciding Pend. Case; and (IV) Related Relief, ECF No. 196.

<u>The Trustee's Sale of the Property</u>

On December 10, 2024, the Trustee filed a motion to sell the Property free and clear of liens and for Court approval of procedures to be used in connection with the sale, which the Court approved on January 13, 2025.  Ch. 7 Tr.'s Mot. for Entry of Orders, Pursuant 11 U.S.C. §§ 105(A), 363(B), (F), (K), (M), and 365, Rules 2002, 6004 and 6006 of Fed. R. Bankr. P.,  ECF No. 114; Order, Pursuant 11 U.S.C. §§ 105(A), 363(B), (F), (K), (M), and 365, and Rules 2002, 6004 and 6006 of the Fed. R. Bankr. P., ECF No. 137.  In April 2025, the Court granted the Trustee's request for extensions of deadlines fixed in the January 13, 2025 Order.  Am. Order, Pursuant to 11 U.S.C. §§ 105(A), 363(B), (F), (K), (M), and 365, and Rules 2002, 6004 and 6006 of the Fed. R. Bankr. P., ECF No. 199 (the "Amended Sale Process Order").

Pursuant to the Amended Sale Process Order, on February 27, 2026, the Trustee filed a notice of the proposed sale of the Property identifying Emilio Noseda as the purchaser of the Property for $900,000 and scheduling a March 10, 2026 hearing for the Court to consider the Trustee's request to approve the Property sale.  Notice of Desig. Purchaser and Sale Confirm. Hr'g, ECF No. 282 (the "Trustee's Notice of Sale").

On March 3, 2026, Honeedew objected to the Trustee's Motion and the Amended Sale Process Order, claiming, among other things, that the Trustee was selling the Property for less than market value and the Trustee could not sell the Property because Honeedew's secured claims exceeded the $900,000 sale price and, therefore, the Trustee could not satisfy Bankruptcy Code section 363(f)'s requirements respecting sales free and clear of liens.  Honeedew's Consolid. Resp. and Obj. to Ch. 7 Tr.'s: (I) Mot. to Conduct Sale of Prop. Free and Clear and Implement. Proceds. [Doc. No. 199]; and (II) Mot. to Approv. Stip. and Compromise Pursuant to Fed. R. Bank. P. 9019 [Doc. No. 278], ECF No. 287.  An evidentiary hearing on the Sale Motion was conducted on May 8, 2026 and May 11, 2026.  The Court read a decision into the record overruling Honeedew's objections and approving the sale.

Trustee's Claim Objection

The Trustee's Objection seeks entry of an order, reclassifying Honeedew's claims as general unsecured claims and reducing the claims to $7,547,508.70.  The Trustee argues the Secured Proofs of Claim fail to establish that Honeedew has a valid security interest in the Property under Argentine law.  Trustee's Objection at ¶ 56.  Additionally, Honeedew's claims against Barbara cannot be secured claims because Barbara has no interest in the Property.  *Id.*  The Trustee also claims Honeedew overstates the amount of its claims.  *Id.* at ¶ 57.  Specifically, the Trustee argues that the Second Contempt Judgment did not grant Honeedew monetary damages that were in addition to the Initial Judgment; rather, the Second Contempt Judgment directed the Debtors to pay the Initial Judgment by a date certain or potentially face incarceration.  *Id.*

Honeedew's Response asserts its security interest in the Property is valid and enforceable under Argentine law.  Honeedew's Response at ¶¶ 46-50.  Additionally, Honeedew argues the Trustee should be estopped from seeking to reclassify the Secured Proofs of Claim because the

Trustee had notice of Honeedew's security interest based on Honeedew's original proof of claim in Barbara's case and the Honeedew MFRS, that put the Trustee on notice of the Exequatur Proceeding. Honeedew's Response at ¶ 66. Honeedew also argues it would be unfair to reclassify Honeedew's claims as unsecured claims because Honeedew pursued judgment enforcement for years, and facilitated the Trustee's election. *Id.* Further, Honeedew contends it is entitled to claims in excess of $15 million based on the Initial Judgment, First Contempt Judgment, and Second Contempt Judgment. Honeedew's Response at ¶¶ 51-65. Honeedew also argues it is not precluded from asserting secured claims, notwithstanding the Secured Proofs of Claim were filed after the Bar Date, because the Secured Proofs of Claim are amendments to Honeedew's timely filed proofs of claim. Honeedew's Response at ¶¶ 42-45

In its reply, the Trustee argues that Honeedew's Secured Proofs of Claim should be disallowed because they assert new claims that were filed after the Bar Date as opposed to amendments to previously filed claims. Trustee's Reply at ¶¶ 12-34. The Trustee also contends that Honeedew is equitably estopped from asserting secured claims because the Trustee reasonably relied on Honeedew's representation that it was an unsecured creditor. Trustee's Reply at ¶¶ 35-43.

## DISCUSSION

### I.    Honeedew Waived Its Security Interests and is Equitably Estopped from Asserting Secured Claims

The Court need not determine whether Honeedew has a valid security interest in the Property. If Honeedew had an enforceable security interest in the Property, Honeedew waived that interest through its actions in the Debtors' bankruptcy cases. Those actions include amending the proof of claim it filed in Barbara's case to omit its secured claim, filing an unsecured claim in Carlos' case, calling for and voting in a trustee election, and waiting approximately eighteen

10

months to file the Secured Proofs of Claim. Further, as set forth more fully below, Honeedew is equitably estopped from asserting a claim secured by the Property because the Trustee did not know that Honeedew would assert secured claims, the Trustee reasonably relied on Honeedew's representations in its proofs of claims that its claims were unsecured, and the Trustee and the Debtors' bankruptcy estates would be prejudiced if Honeedew were permitted to assert claims secured by the Property.

      a. <u>Honeedew Waived Any Security Interest It Had in the Property.</u>

Bankruptcy Code section 702 governs the election of chapter 7 trustees and provides:

> (a) A creditor may vote for a candidate for trustee only if such creditor--
>
> (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;
>
> (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and
>
> (3) is not an insider.

11 U.S.C.A. § 702 (West).

The chapter 7 trustee is the representative of general unsecured creditors and provides protection for general unsecured creditors. *In re Klein*, 110 B.R. 862, 877 (Bankr. N.D. Ill.), aff'd in part, rev'd in part, 119 B.R. 971 (N.D. Ill. 1990). The interests of secured creditors are adverse to the interests of general unsecured creditors. *Id.*; *In re Centennial Textiles, Inc.*, 209 B.R. 31, 35 (Bankr. S.D.N.Y. 1997) (undersecured claim represents materially adverse interest to unsecured creditors). As Bankruptcy Code section 702(a)(2) precludes creditors with materially adverse claims from voting in a trustee election, creditors holding secured claims are not permitted to vote in trustee elections. *Id.*

Waiver is "the intentional relinquishment of a known right" that may be "manifested either expressly or by conduct inconsistent with an intent to enforce that right[.]"  *In re Concepts Am., Inc.*, 621 B.R. 848, 860 (Bankr. N.D. Ill. 2020).  If a creditor "tak[es] actions inconsistent with holding a secured claim[,]" the creditor may be deemed to have waived that security interest.  *Id.* "Although the mere filing of a secured debt as unsecured does not conclusively amount to a waiver of security against a bankrupt's property, a valid waiver will be found to have been made if, in addition for example, the secured claimant votes the claim for the full amount in the trustee election."  *Matter of Russo*, 18 B.R. 257, 270 (Bankr. E.D.N.Y. 1982).  A delay in asserting the secured claim also may be grounds for waiver.  *In re Concepts Am., Inc.*, 621 B.R. at 861 (creditor waived its security interest by voting in trustee election and failing to mention its secured status in representations to the court and parties in interest for months).

Honeedew argues its Secured Proofs of Claim preserved Honeedew's security interests in the Property because the Secured Proofs of Claim, although filed after the Bar Date, are amendments to its timely filed proofs of claim.  Hondeedew's Response at ¶¶ 42–50.  Honeedew's failure to assert secured claims in timely filed proofs of claim, in and of itself, is not the reason the Court is holding that Honeedew waived its secured claim.  That a creditor asserts a secured claim in a late filed claim is insufficient grounds to avoid a secured creditor's lien.  *See Hamlett v. Amsouth Bank (In re Hamlett)*, 322 F.3d 342, 348–49 (4th Cir. 2003); *see also, Shelton v. CitiMortgage, Inc. (In re Shelton)*, 477 B.R. 749 (B.A.P. 8th Cir. 2012); *FDIC v. Union Entities (In re Be-Mac Transp. Co., Inc.*, 83 F.3d 1020, 1027 (8th Cir. 1996); *In re Thomas*, 883 F.2d 991, 997 (11th Cir. 1989); *In re Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984).  Honeedew's alleged security interest in the Property would not have been waived even if Honeedew filed no proofs of claim.  *See* Bankruptcy Code section 506(d)(2) ("To the extent that a lien secures a claim against

the debtor that is not an allowed secured claim, such lien is void, unless such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim. . . .”). Rather, Honeedew waived any security interest it had in the Property because its actions were inconsistent with those of a secured creditor.

Here, Honeedew filed a partially unsecured claim in Barbara's case. However, prior to calling a trustee election, Honeedew amended that proof of claim to omit the secured claim. Thereafter, Honeedew filed an unsecured claim in Carlos' case. As of the dates of the trustee elections in the Debtors' bankruptcy cases, Honeedew was the only creditor that had filed proofs of claim. Therefore, Honeedew was the only creditor eligible to call for, and vote in, a trustee election. *See* Bankruptcy Rule 2003(b)(3). If Honeedew had not disavowed its security interest in the Property, no elections could have been called and the interim chapter 7 trustee would have qualified as the permanent chapter 7 trustee in the Debtors' Cases. *See* 11 U.S.C. § 701(b), 702(d). Honeedew, however, would have been free to seek relief from the automatic stay to enforce its liens on the Property, and monetize the Property for its sole benefit. Honeedew's actions evidence that it made a choice to waive its right to assert a security interest in the Property (assuming that Honeedew had a security interest) for the privilege of electing the trustee of its choice, who would incur the costs of monetizing the Property and the attendant risk of nonpayment if the Property could not be sold.

The facts illustrate why holders of secured or partially secured claims are adverse to holders of general unsecured claims and should not be permitted to vote in chapter 7 trustee elections or delay asserting their security interests, without waiving their security interests. Here, Honeedew elected the Trustee and acted as if it held unsecured claims while the Trustee and his professionals worked to sell the Property to benefit the Debtors' estates and all their creditors. Only after

Honeedew disagreed with the Trustee's decision to sell the Property to Noseda for $900,000 did Honeedew seek to enforce its security interests in the Property and monetize the Property for Honeedew's sole benefit. Honeedew's enforcement of its security interests would be detrimental to all unsecured creditors. If Honeedew enforces its security interests in the Property, all proceeds from the Property would be paid to Honeedew and no proceeds would be available to pay other creditors of the estates, including the fees of estate professionals that assisted the Trustee with the Property sale. Creditors with secured claims should be required to decide whether to monetize their collateral at their own risk and expense, or to waive their security interests in their collateral in the hopes a chapter 7 trustee will achieve a satisfactory result.

b. Honeedew is Equitably Estopped from Asserting a Claim Secured by the Property.

The Trustee asserts that Honeedew is equitably estopped from asserting a claim secured by the property. Trustee's Reply at ¶¶ 35–42. To succeed on its claim, the Trustee must prove he: (1) lacked knowledge of Honeedew's secured claim, (2) reasonably relied on Honeedew's misleading conduct, and (3) suffered prejudice as a result of his reliance. *In re Cash*, 319 F. App'x 4, 5 (2d Cir. 2009).

Honeedew argues the Trustee knew of Honeedew's secured claim based on Honeedew's MFRS that disclosed the status of the Exequatur Proceedings. However, after Honeedew filed that motion, Honeedew: (a) amended its proof of claim in Barbara's Case to delete the reference to a partially secured claim; (b) filed an unsecured claim in Carlos' Case; (c) called for trustee elections in both cases; and (d) elected the Trustee in both cases. Further Honeedew represented in the motion it was seeking stay relief to benefit the estates. Honeedew's MFRS at 10. Honeedew also represented in the motion that it was seeking relief from stay pending the election of a Trustee and "there will be no interference with the bankruptcy cases as Honeedew will, if this Motion is

14

granted, work cooperatively with the trustee towards securing the value derived from the [Property]." *Id.* at 9, 11. Further, Honeedew's counsel explained that Honeedew requested stay relief because Honeedew was unable to communicate with the Argentine Court to end the Exequatur Proceeding and did not want to "somehow violate a stay . . . with regards to anything in Argentina." March 6, 2025 H'rg Tr. 5:3–9, 20–23, ECF No. 191. Based on the foregoing, the Honeedew MFRS did not put the Trustee on notice that Honeedew would assert claims secured by the Property.

The Trustee reasonably relied on Honeedew's representation in its proofs of claim that Honeedew was an unsecured creditor. There is no indication in the record of these cases that Honeedew was going to assert a secured claim until Honeedew filed the Secured Proofs of Claim, which was approximately eighteen months after it filed unsecured claims, and almost a year after the Trustee filed the Sale Motion.

The Debtors' bankruptcy estates will suffer prejudice from Honeedew's change of position. Once Honeedew filed unsecured proofs of claim admitting it did not have a lien on the Property, the Trustee had a reasonable expectation that Property sale proceeds would be available to pay the costs of sale (including legal fees and the Trustee's commission), and to fund a distribution to general unsecured creditors. Honeedew's shift from unsecured creditor to secured creditor occurred after the Trustee incurred the expense of marketing the Property, and after marketing efforts indicated the Property would not fetch more than $900,000 – a fraction of Honeedew's alleged $15 million claim. Therefore, if Honeedew were permitted to assert a security interest in the Property now, all sale proceeds would be paid to Honeedew on account of its secured claims and there would be no proceeds to pay the fees and expenses incurred by the Trustee or his

15

professionals in marketing  the Property and procuring a buyer, or to fund a distribution to other unsecured creditors.

The Trustee has satisfied his burden of proving he did not know of Honeedew's secured claims, reasonably relied on Honeedew's representation that its claims were unsecured, and permitting Honeedew to assert a claim secured by the Property would prejudice the Debtors' bankruptcy estates.  Therefore, Honeedew is equitably estopped from asserting a security interest in the Property.

## II.    Honeedew's Claim Amount

Under the Bankruptcy Rules, a properly filed proof of claim is prima facie evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f) ("[a] proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity of the amount of the claim.").  A proof of claim is properly filed if it "set[s] forth the facts necessary to support the claim." *In re GEK Realty & Home Improvement LLC*, 609 B.R. 61, 68 (Bankr. E.D.N.Y. 2019).  A party objecting to a claim carries the burden of presenting evidence sufficient to rebut this presumption of validity. *Id.* (citing *Raleigh v. Illinois Dep't of Revenue,* 530, U.S. 15, 15 (2000)).  To be "sufficient," the objecting party's evidence must have probative value that is "equal" in force to the facts set forth in the claim. *Id.*

The Trustee argues the Second Contempt Judgment does not grant a fine that is separate and apart from the amounts owed under the Initial Judgment; rather, the Second Contempt Judgment directs the Debtors to pay the amounts owed under the Initial Judgement within thirty days of the entry of the Second Contempt Judgment or risk incarceration.

The Second Contempt Judgment recounts that the Debtors owed $4,603,408.23 to Honeedew due to the Initial Judgment and the Debtors interfered with Honeedew's attempts to

16

collect the debt.  In that regard, the Second Contempt Judgment found that the Debtors falsely represented to Honeedew that the Property was encumbered, and to the Argentine Court that the Initial Judgment was fraudulent.  In response, the New York state court entered an order that directed the Debtors to execute affidavits acknowledging the validity of the Initial Judgment.  The Debtors failed to provide the affidavits and took other actions that unfairly impaired Honeedew's ability to collect the Initial Judgement.  The Second Contempt Judgment states it is:

> OREDERED that the defendants Carlos Abadi and Barbara Abadi are directed to pay the plaintiff, within 30 days of the date of the service upon them of this order with notice of entry, the sum of $4,603,408.23, plus statutory interest from May 17, 2017, the date that the judgment by confession was entered; and it is further

> ORDERED that, unless the defendants shall purge themselves of the aforesaid contempt by paying the judgment in the sum of $4,603,408.23, plus statutory interest from May 17, 2017, upon the failure of one or both of the defendants Carlos Abadi and Barbara Abadi to voluntarily appear before the Supreme Court to answer this order of contempt, the court will issue a warrant directing the sheriff to bring the non-appearing defendant(s) before the court.

*Id.*  The Debtors failed to pay $4,603,408.23 within 30 days of entry of the Second Contempt Judgment.  Ultimately, the New York state court judge incarcerated the Debtors for contempt for failing to pay the Initial Judgment as directed.  The Debtors were released from prison only after filing these bankruptcy cases.

Honeedew's calculation of the Second Contempt Judgment as $8,414,046.00 is based on a page of a New York state court hearing transcript, in which the judge explained to Carlos that the amount owed under the Initial Judgment had grown from $4.6 million to over $8 million due to the accrual of interest at the nine percent statutory rate of interest.  *See* May 15, 2024 H'rg Tr. at 34, Honeedew's Response, Ex. C, ECF No. 286-6.  The transcript does not support Honeedew's contention that the Second Contempt Judgment is owed in addition to the amounts owed under the Initial Judgment.

The Court finds that the Second Contempt Judgment is clear and unambiguous on its face and directed the Debtors to pay the amounts owed under the Initial Judgment, plus interest, by a date certain, or face imprisonment. The Court finds the Second Contempt Judgment did not impose an additional $8,144,000.00 fine on the Debtors. Therefore, as of the dates the Debtors' bankruptcy cases were commenced, each of the Debtors, jointly and severally, owed Honeedew $7,547,508.70, representing the sum of $7,524,492.09 of principal and interest owed under the Initial Judgment plus $23,016.61 under the First Contempt Judgment.

**CONCLUSION**

For the reasons set forth above, it is

**ORDERED**, that the proof of claim filed on behalf of Honeedew and identified on the claims register of Barbara's bankruptcy case as Claim No. 1-3 is reclassified, reduced, and allowed as a general unsecured claim in the amount of $7,547,508.70; and it is further

**ORDERED**, that the proof of claim filed on behalf of Honeedew and identified on the claims register of Carlos' bankruptcy case as Claim No. 1-2 is reclassified, reduced, and allowed as a general unsecured claim in the amount of $7,547,508.70.



Dated: May 21, 2026
    Brooklyn, New York

Jil Mazer-Marino
Chief United States Bankruptcy Judge